

**FILED** DB
3/11/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

:Lance – Dolph :Scott )
In care of 780 Sugarcreek Drive )
Township of Joliet/Will County )
Republic of Illinois [60433] )
(815) 768-7828 )
)
      Plaintiff, Self-Represented, )
)
      -vs- )
)
**LUKE ANDREW CASSON**, sued in his )
individual and personal capacity as a )
State of Illinois registered Attorney )
At-Law, )
**ANDREOU & CASSON, LTD.**, sued in )
its official capacity as a State of Illinois )
registered Law Firm organized and )
existing under the Laws of the State of )
Illinois, and located in Cook County, )
661 West Lake Street, Suite 2N )
Municipality of Chicago, IL. 60661 )
(312) 935-2000 )
)
**ELIZABETH A. GRANOFF**, sued in )
her individual and personal capacity as )
as a State of Illinois registered Attorney )
At-Law, )
**LAW OFFICES OF ELIZABETH A.** )
**GRANOFF,** sued in its official capacity )
as a State of Illinois registered Law Firm )
organized and existing under the Laws of )
State of Illinois, )
661 West Lake Street, Suite 2N )
Municipality of Chicago, IL 60661 )
(312) 441-1250 )
)
      Defendants. )

CIVIL ACTION NUMBER

**21cv1383
Judge Harry D Leinenweber
Magistrate Judge Sunil R. Harjani**

JURY TRIAL DEMANDED

AMOUNT IN CONTROVERSY

**VERIFIED COMPLAINT**

**GINA M. ABBATEMARCO**, sued in )
her individual and personal capacity )
as a Senior Counsel for the Attorney )
Registration And Disciplinary )
Commission of the Supreme Court )
of Illinois (Chicago Office), )
**EILEEN W. DONAHUE,** sued in her )
individual and personal capacity as a )
Senior Counsel for the Attorney )
Registration and Disciplinary Commission )
of the Supreme Court of Illinois )
(Chicago Office), )
**ATTORNEY REGISTRATION AND** )
**DISCIPLINARY COMMISSION of the** )
**SUPREME COURT OF ILLINOIS,** )
**(Chicago Office)** sued in its official )
capacity as a Wing of the of the Supreme )
Court of Illinois organized and existing )
under the Laws of the State of Illinois and )
under the control of the Illinois Supreme )
Court, )
One Prudential Plaza )
130 East Randolph Drive, Suite 1500 )
Municipality of Chicago, IL 60601-6219 )
(312) 565-2600 )
)
Defendants. )

## VERIFIED COMPLAINT

**COMES NOW** :Lance – Dolph :Scott ("Scott"), the Plaintiff, Self-Represented, and

complains of **LUKE ANDREW CASSON** ("Casson"), **ANDREOU & CASSON, LTD.**

("The Ltd."), **ELIZABETH A. GRANOFF** ("Granoff"), **LAW OFFICES OF ELIZA-**

**BETH A. GRANOFF** ("The Law Offices"), **GINA M. ABBATEMARCO**

("Abbatemarco"), **EILEEN W. DONAHUE** ("Donahue"), and the **ATTORNEY REGIS-**

**TRATION AND DISCIPLINARY COMMISSION (Chicago Office)** ("The Commission").

2.

## I.  PRELIMINARY STATEMENT

1.   This action is being brought forth pursuant to Title 42 U.S.C. Section 1981(a) discrimination against being afforded with the full and equal benefit of Illinois Supreme Court Rule 752 and Illinois Supreme Court Rule 753(a)(c) by way of the full and equal benefit of all laws and proceedings enumerated activity and the equal protection of the laws clause of the Fourteenth Amendment of the Constitution for the United States of America, and is being brought forth pursuant to Title 42 U.S.C. Section 1983 – Deprivation of Rights, and is being brought forth pursuant to Title 42 U.S.C. Section 1985(3) Conspiracy to Interfere with the right by way of the equal protection of the laws clause of the Fourteenth Amendment of the Constitution for the United States of America seeking Compensatory, Discretionary, General, Proximate and Punitive damages against defendants **GINA ABBATEMARCO, ELIZABETH A. GRANOFF**, **EILEEN W. DONAHUE,** and **LUKE ANDREW CASSON** and seeking Compensatory damages against defendants **ILLINOIS ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION (Chicago Office), ANDREOU & CASSON, LTD.**, and **LAW OFFICE OF ELIZABETH A. GRANOFF,** and is being brought forth pursuant to the State Law Torts of Negligent Breach of Fiduciary Duty, Reckless Breach of Fiduciary Duty, Unjust Enrichment, Conversion and Breach of Contract and Covenant of Good Faith and Fair Dealing seeking Compensatory, Discretionary, General and Punitive damages judgment against defendant **LUKE ANDREW CASSON**, and seeking Compensatory damage judgment against defendant **ANDREOU & CASSON, LTD.**

2.

I, plaintiff Lance Dolph Scott, contend that based upon my ethnicity/nationality, black american negro, and based upon my self-represented status during the proceedings on my ARDC Request For Investigation Of A Lawyer, Claim # 2018-IN04450, and based upon the amount of money sought to be obtained to cover actual losses claimed in my submitted ARDC Client Protection Program claim, Case # 2019CP00078, that defendant Elizabeth Grandoff, while using her former position as a Senior Counsel for the defendant ARDC (Chicago Office), and using her position as a Attorney Disciplinary Defense Attorney, entered into a conspiracy and scheme with defendant Gina Abbate-marco, and defendant Eileen W. Donahue, having as its general purpose, to discriminate against, interfere with and to obstruct my rights under Illinois Supreme Court Rule 752 and Illinois Supreme Court Rule 753 et. seq., by way of intentionally submitting fraudulent, misleading, inaccurate, incomplete and incorrect written statements directed toward my November 13, 2018 file ARDC Re-New Request for Investigation against defendant Casson, Claim No. 2018IN04450, in order to procure a fallacious determination in favor of defendant Casson, and to obstruct defendant Casson from being held liable for engaging in Professional Misconduct in the form of violating his Fiduciary duty owed to me, as determined by U.S. District Judge Matthew F. Kennelly issued Order of September 19, 2018 in reference to Case Number 1:04 - cv – 6532, and to cover-up defendant Casson's Breach of Contract and Conversion behavioral practices in reference to the non-fulfillment of the terms and conditions of negotiated and entered into agreed Settlement of Case Number 1:04-cv-6521, and to discriminate against and deprive me of my right to obtain monetary recovery for legitimate losses through defendant Attorney Registration and Disciplinary Commission (Chicago Office) Client Protection Program.

3.

I, plaintiff Lance Dolph Scott, further contend that based upon the unwillingness on the part of defendant Commission's Administrator to take any action on my written request for intervention to correct the wrongdoings committed by defendants Abbate-marco, Granoff, and Donahue, that I, plaintiff Lance Dolph Scott, honestly and in good faith believe that I am entitled to federal court remedial action against all of the cited defendants in this action.

## II   JURISDICTIONAL STATEMENT

2.   This action is brought pursuant to Title 42 U.S.C. Section 1981(a), Title 42 U.S.C. Section 1983 and Title 42 U.S.C. Section 1985(3) and the Fourth and Fourteenth Amendments of the Constitution for the United States for America, and the State Law Tort of Negligence. Jurisdiction is founded upon Title 28 U.S.C. Section 1331, 1341(3) and (4) and 1343, and the aforementioned constitutional provisions. This court has supplemental jurisdiction over the state law claims of this action pursuant to Title 28 U.S.C. Section 1376(a) because they are so related to the claims under Title 42 of the United States Codes that they form the same cause or controversy under Article III of the Constitution for the United States of America.

## III.   VENUE

3.   Venue is proper in this district pursuant to Title 28 U.S.C. Section 1391(b) because this is a civil action that is not founded on diversity of citizenship, and this district is where a substantial part of the events giving rise to this claim accrued, as well as is the district where defendant Luke Andrew Casson, defendant Elizabeth A. Granoff, defendant Gina M. Abbatemarco, and defendant are employed, and is the district where defendant **ANDREOU & CASSON, LTD.,** and defendant **LAW OFFICES OF ELIZABETH**

4.

**A. GRANOFF** is located, and is the district where defendant **ILLINOIS ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION** (Chicago Office) is located.

## IV. PARTIES

4. The Plaintiff, **LANCE DOLPH SCOTT** (At all times relevant hereinafter is referred to as plaintiff "Scott" at all time mentioned hereinafter) is a 14th Amendment Black American Negro citizen by virtue of his being birth in the United States of America, and he is was complainant party in ARDC Complaint Number 2018 IN 4450, who had entered into a written contractual agreement with Attorney Luke Andrew Casson for affording him with legal assistance and representation in connection to Case Number 1:04-cv-6532, docketed at the U.S. District Court, N.D. Illinois presided over by Judge Matthew F. Kennelly, and he represent a Claimant in defendant Commission's Client Protection Program, Claim Number 2019CP00078. Plaintiff Scott currently resides at 708 Sugar Creek Drive located in the Township of Joliet/Will County, Republic of Illinois.

5. The Defendant, **GINA M. ABBATEMARCO** (At all relevant times hereinafter referred to as defendant "Abbatemarco" at all time mentioned hereinafter) is a Caucasian American woman who serves as one of the senior counselors for the Illinois Attorney Registration And Disciplinary Commission of the Supreme Court of Illinois (Chicago Office). When engaged in the conduct complained of, did so while acting outside of the course an scope of her duties as a Senior Counselor for the Illinois Attorney Registration and Disciplinary Commission (Chicago Office). Defendant Abbatemarco is being sued in her individual and personal capacity as a servant, agent and/or employee of the Illinois

5.

Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (Chicago Office).

6. The Defendant, **EILEEN W. DONAHUE** (At all relevant times mentioned hereinafter is referred to defendant Donahue at all times mentioned hereinafter ) is a Caucasian American Woman, is one of the Senior Counsels for the Illinois Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois ( Chicago Office). When engaged in the conduct complained of , did so while acting outside of the course and scope of her duties as a Senior Counsel for the Illinois Attorney Registration and Disciplinary Commission (Chicago Office). Defendant Donahue is being sued in her Individual capacity as an servant, agent and/or employee of defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office).

7. The Defendant, **ILLINOIS ATTORNEY REGISTRATION AND DISCIPLIN-ARY COMMISSION of the SUPREME COURT OF ILLINOIS (Chicago Office)** (At all relevant times referred to as defendant Commission at all times mentioned hereinafter) is a wing of the Supreme Court of Illinois. Defendant Commission is the employer of defendant Abbatemarco and defendant Donahue, and, and such is directly responsible and liable for the conduct of the defendant Abbatemarco and Donahue. Defendant Commission is sued in its official capacity in Count II Section 1985(3) claim and Count III Section 1981(a) claim pursuant to the doctrine of respondeat superior.

8. The Defendant, **LUKE ANDREW CASSON** (At all relevant times mentioned hereinafter is referred to as defendant Casson at all times mentioned hereinafter) is a Caucasian American male who is a duly sworn and registered Attorney At- Law with the Illinois Attorney Registration and Disciplinary Commission. Defendant Casson served as

Plaintiff Scott's contracted legal assistant and legal representative in reference to Case Number 1:04-cv-6532, docketed at the United States Distract Court N.D. Ill. When engaged in the conduct complained of, did so while acting outside of the course and scope of his contractual relationship with plaintiff Scott, as well as was acting outside of the course and scope of his obligations as a duly sworn and registered Attorney with the Illinois Attorney Registration and Disciplinary Commission (Chicago Office). Defendant Casson is being sued in his individual and personal capacity as a servant, agent and/or employee of defendant Andreou & Casson, Ltd.

9.    The Defendant, **ANDREOU & CASSON, LTD**. (At all times mention hereinafter is referred to as defendant "LTD" at all times mentioned hereinafter) is a duly registered Law Firm in the State of Illinois, and is the employer of the defendant Casson, and, as such, is totally liable for the conduct of defendant Cassson. Defendant LTD is being sued directly in Count II in its official capacity pursuant the doctrine of respondeat superior.

10.  The Defendant, **ELIZABETH A. GRANOFF** (At all times mentioned hereinafter is referred to as defendant "Granoff" at all times mentioned hereinafter) is a Caucasian American woman who is a duly sworn and registered Attorney At-Law with the Illinois Attorney Registration an Disciplinary Commission (Chicago Office) and who is a former Senior Counsel for the Illinois Attorney Registration and Disciplinary Commission (Chicago Office ). When engaged in the conduct complained of, did so, while acting outside of the course and scope of her obligation as a duly sworn and registered Attorney At-Law, and as a former Senior Counselor for the Illinois Attorney Registration (Chicago Office). Defendant Granoff is being sued in her individual and personal capacity as a servant, agent and/or employee of defendant Law Office of Elizabeth A. Granoff.

7.

11.    The Defendant, **LAW OFFICE OF ELIZABETH A. GRANOFF** (At all times relevant hereinafter referred to as defendant "Law Office" at all times mentioned hereinafter) is a State of Illinois registered Law Firm, and is the employer of defendant Granoff, and, as such, is total responsible and liable for the conduct of the defendant Granoff. Defendant Law Office is being sued in its official capacity in Count II Section 1985(3) claim pursuant to the Doctrine of Respondeat Superior.

12.    At all times material to this verified original complaint, defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office) individual defendants, Gina M. Abbatemarco, and Eileen W. Donahue, along with defendant ARDC former Senior Counsel, Elizabeth A. Granoff, were acting "Under the Color of" the rules, regulations, customs, policies, practices, statutes and usage of Attorney Registration and Disciplinary Commission (Chicago Office), the Supreme Court of Illinois, and the State of Illinois.

## V.    FACTS COMMON TO ALL COUNTS

### DECLARATION OF LANCE DOLPH SCOTT
### PURSUANT TO TITLE 28 U.S.C. SECTION 1746

13.    I, Lance Dolph Scott, declare if called upon could competently testify to the following facts from my own personal knowledge.

14.    The Ill. Sup. Ct. R. Preamble: a Lawyers Responsibilities set forth the specific duties and obligation which a Lawyer owes to a client whom the Lawyer has entered into a written Contractual Agreement with clients for the provision of legal assistance, as well as set forth the ethnical standards by which all practicing Attorneys At-Law are required to ethically govern their behavioral practices during the course of their engage-ing in the affairs of the proper administration of Justice. (A true and accurate copy of

8.

Ill. Supp. Ct. R. Preamble: a Lawyer's Responsibilities and Scope are attached hereto and made part of this verified complaint, labeled "Exhibit A").

15. Defendant Casson, as my former contractual legal representative in reference to the the United States District Court ND. Ill. proceedings in Case No. 1:04 - cv – 6532, owed me a legal obligation to utilize his full competent legal skills and knowledge to adequately represent my interest during the proceedings in Case No. 1:04 – cv – 6532, especially for the recovery of my full settlement amount of money per the issued Order of April 1, 2006 entered by U.S. District Judge Matthew F. Kennelly (A true and accurate copy of the Contract for Legal Services, as well as a true and accurate copy of the April 1, 2006 entered into Settlement Agreement are attached hereto and made part of this verified complaint, labeled "Exhibit B").

16. During the course of attempting to obtain my entitled to monies pursuant to the terms and the condition of the settlement agreement in reference to Case No. 1:04 – cv – 6532. Defendant Casson violated his fiduciary duty owed to me, and he breached the terms and conditions of our entered into written contract for legal representation services, particular as the violation of his fiduciary duty and his breach of contract relates to the non-fulfillment of his legal obligations owed to me in reference to the April 1, 2006 entered into Settlement Agreement.

17. On or about the ___th day of _____, 2018, based upon Case No. 1:04 –cv-6532 party defendant, James Worthington having defaulted on the payment agreement set forth in the Settlement Agreement and Mutual General Release, coupled with the failure on the part of defendant Casson to fulfill his legal obligation owed to me per our entered into CONTRACT to seek enforcement of U.S. District Judge, Matthew F. Kennelly's issued

9.

Settlement Order of August 1, 2006, and based upon defendant Casson having had de-frauded me out of my portion of one of the settlement installment payments. I file with the U.S. District Court N.D. Ill., a motion to enforce Settlement Order of August 1, 2006 seeking to be awarded $250,000.00 plus accumulated interest on the $250,000.00, and I sought of the Court to command defendant Casson to tender over the $6,000.00 which he had defrauded me out of (A true and accurate copy of the Motion to Enforce Settlement Order of August 1, 2006 is attached to this verified complaint, labeled "Exhibit C" p. 1 & p. 3).

18.    On or about the 9th day of August, 2018, based upon the persistent failure on the part of defendant Casson to produce any type of documentation to dispute the claims set forth in my motion to enforce settlement order entered on August 1, 2006, as defendant Casson was required to do per directive issued from U.S. District Judge, Matthew F. Kennelly. I submitted my second LR 78.5 motion request for decision on my motion to en-force settlement award entered on August 1, 2006 (A true and accurate copy of my August 9, 2018 submitted Second LR 78.5 Motion Request For Decision is attached hereto and made part of this verified complaint, labeled "Exhibit D").

19.    During the hearing on my second request for a decision presented to U.S. District Judge, Matthew F. Kennelly. Neither did defendant Casson re-appear before the U.S. District Judge, Matthew F. Kennelly, nor did he, defendant Casson, contact U.S. District Judge, Matthew F. Kennelly, for placing U.S. District Court Judge, Matthew F. Kennelly on personal notice about his inability to re-appear before U.S. District Court Matthew F. Kennelly, though defendant Casson was afforded formal notice well in

advance of the hearing, requiring of him to re-appear before U.S. District Court Judge, Matthew F. Kennelly.

20.    That on or about the 19th day of September, 2018, U.S. District Judge, Matthew F. Kennelly, issued Order on plaintiff Scott's Motion to Enforce, which among other things, included a finding of facts and conclusion of law determining the defendant Casson had violated his Fiduciary obligation owed to plaintiff Scott (A true and accurate copy of U.S. District Judge, Matthew F. Kennelly's September 19, 2018 issued order is attached hereto and made part of the verified complaint, labeled "Exhibit E").

21.    As my Fiduciary, defendant Casson had a duty to act in god faith and in the interest of me, plaintiff Scott.

22.    Despite this duty, defendant Casson entered into one or more financial transactions adversely affecting my, plaintiff Scott, financial interests while serving as my Fiduciary.

23.    Defendant Casson, while acting and serving as my, plaintiff Scott's Fiduciary failed to account for the dispersal and use of funds taken from my, plaintiff Scott's April 1, 2006 entered into settlement agreement with James Worthington, defendant in Case No. 1:04 – cv – 6532.

24.    While acting and serving as my, plaintiff Scott's Fiduciary, defendant Casson utilized the financial resources due to me, plaintiff Scott for defendant Casson's personal profit or advantage with no significant benefit accruing to me, plaintiff Scott.

25.    During the period of time when defendant Casson was acting as my, plaintiff Scott's Fiduciary, defendant Casson wrongfully converted, lost, or dissipated the second and final settlement installment payments and the settlement agreement defaulted monies in cash or other monetary instruments belonging to me, plaintiff Scott, using such Funds

11.

for his, defendant Casson's own use and benefit and/or for the use and benefit of persons other than me, plaintiff Scott.

26.    That as of the date of the filing of this verified complaint. Neither has defendant Casson contacted me either by written correspondence or by telephone conversation that he was withdrawing as my contracted attorney. Nor has defendant Casson filed any motion with the U.S. District Court Judge, Matthew F. Kennelly to secure a Court Order allowing him to withdraw from serving as my contracted attorney.

27.    That as of the date of the filing of this verified complaint. Defendant Casson has not submitted the necessary documentation to the U.S. District Court N.D. Ill., in order to obtain my entitlement to the total amount of the judgment entered my favor of based upon the defaulting on the part of James Worthington, party defendant in Case Number 1:04-cv-6532, to abide by the terms and conditions of the entered into Settlement Agreement and Mutual General Released (*See* Exhibit B, pgs. 3 – 6 attached hereto).

28.    Defendant Casson's conduct toward me, plaintiff Scott, while he was serving as my, plaintiff Scott's Fiduciary was outrageous, with his acts being done with malice or bad motive or reckless indifference to my, plaintiff Scott's interests.

29.    I am the self-represented complainant in defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office) November 13, 2018 submitted Re-New Request For Investigation, RE: Luke Andrew Casson in relation to Lance Scott, No. 2018IN00450, and I am the self-represented complainant in defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office) July 16, 2019 submitted Client Protection Program Claim, RE: Luke Andrew Casson in relation to Lance Scott, No. 2019CP00078.

30.   As a wing of the Supreme Court of Illinois, defendant Commission owed me a legal obligation to ensure that all Attorneys At-Law registered with its Chicago Office are held to strict compliance with all of the Illinois Rules of Professional Conduct during the course of an attorney, as well as owed me a legal obligation to afford me with a fair and prompt investigation into my November 13, 2018 filed Re-New Request for Investigation against defendant Casson, and owed me a legal obligation to protect all of my restitution entitlement rights guaranteed under the Client Protection Program (A true and accurate copy of defendant Commission's Mission Statement and Article I. General, Rule 1. Preamble are attached hereto and made part of this verified complaint labeled "Exhibit G").

31.   Based upon U.S. District Judge, Matthew F. Kennelly's issued determination of September 19, 2018 (*See* "Exhibit D" attached hereto, p. 6, paras. 1 & 2). On or about the 13th day of November, 2018, I submitted a Renewed Request For Investigation against Illinois Attorney Luke Andrew Casson for violation of RPC Rule 8.4(a)(b)(c)(d), in connection with the matter concerning Lance Scott v. Ehler Construction, Inc. and James Worthington, docketed at the U.S. District Court N.D. Ill, Case No. 1: 04 –cv-6532. (A true and accurate copy of the November 13, 2018 submitted Renewed Request For Investigation of Attorney Luke Andrew Casson is attached hereto and made part of this verified complaint labeled "Exhibit F").

32.   The renew Request for Investigation was based upon U.S. District Judge Matthew F. Kennelly's September 19, 2018 issued order's a finding of facts and conclusion of law arriving at the determination that attorney Luke Andrew Casson had violated his

13.

Fiduciary duty owed to me in connection with Case No. 1:04-cv-6532 (*See* "Exhibit E", p. 6, paras. 1 & 2 *and see* "Exhibit F" attached hereto).

33. It is the regular procedure and customary practice of defendant Commission to require that a complaining party's Request for Investigation of an Attorney be responded to, in writing, by the complained of attorney (A true and accurate copy of defendant Commission's Rules for Disciplinary Proceedings under Illinois Supreme Court Rule 701 – 777, Article II Investigation By The Administrator, and a true and accurate copy of defendant Abbatemarco's November 21, 2018 dated letter are attached hereto and made part of this verified complaint labeled "Exhibit H" attached hereto).

34. The first over act performed pursuant to the scheme: Contrary to Article II Investigations By The Administrator, Rule 53 Duty of Attorney (*See* Exhibit H, p. 1 attached hereto). As oppose to defendant Casson submitting his own written response to my November 18, 2018 submitted Request for Investigation within the fourteen (14) days time period prescribed by Article II Rule 53, as defendant Casson was required to do per Article II Rule 53 and per defendant Abbatmarco's issued notice of November 21, 2018 (*See* Exhibit H, pgs. 1 & 2 attached hereto). On or about the 12th day of February, 2019, approximately ninety (90) days after defendant Commission was in personal possession of my November 13, 2018 submitted Re-New Request for Investigation of defendant Casson. Defendant Abbatemarco allowed defendant Grandoff, a former Senior Counsel for defendant Commission's Chicago Office, to submit a written response on behalf of defendant Casson, directed toward my November 18, 2018 submitted Re-New Request for Investigation directed toward defendant Casson (A true and accurate copy of defendant Abbatemarco's issued notification of February 20, 2019 along with a true and accur-

14.

ate copy of defendant Granoff's February 12, 2019 submitted response on behalf of defendant Casson are attached hereto and made part of the verified complaint, labeled "Exhibit I").

35. Defendant Granoff, who is currently engaged in private practice as a Disciplinary Defense Attorney, and during the proceedings on defendant Commission's Case No. 2018IN00450 and Case No. 2019CP00078, she shared the same office place with defendant Casson located at 661 West Lake Street, Suite 2N in the Municipality of Chicago, Illinois 60661.

36. It has never been either a policy, procedure, practice, or a custom on the part of defendant Commission to allow and to condone any of its former Senior Counsels, who subsequently became a Attorney Disciplinary Defense Attorney, to file a response on behalf of any attorney who was cited as a complained about party in a Request For Investigation of a Attorney, indicative of the action engaged in by defendant Granoff.

37. The second overt act performed pursuant to and in further on the scheme: In add-ition to the failure on the part of defendant Granoff's February 13, 2019 submitted response either to admit or deny my November 13, 2018 submitted claim of Professional Misconduct on the part of defendant Casson, which was based upon the Breach of Fiduciary duty findings of U.S. District Judge Matthew F. Kennelly . Defendant Granoff excluded pertinent information from her unethical, improper and unlawful response concerning U.S. District Judge Matthew F. Kennelly's determination of September 19, 2018 (*See* "Exhibit F", p. 2 *and see* "Exhibit I" pgs. 1 – 5, *and see* "Exhibit E", p. 6, para. 2 *and see* "Exhibit I" p. 5, para. 4 , p. 6, para. 1). And, defendant Granoff's unethic-al, improper, and unlawful response neglected to include any information pertaining to

15.

the bases for my August 9, 2018 filed Second LR 78.5 Motion Request For Decision prompting U.S. District Judge, Matthew F. Kennelly's determination of September 19, 2018 (*See* "Exhibit D" pgs. 1 – 5 *and see* "Exhibit I" p. 5).

38.     Defendant Granoff's submitted unethical, improper and unlawful response was structured in a manner to disturb U.S. District Judge Matthew F. Kennelly's September 19, 2018 determination of defendant Casson had violated his Fiduciary Duty owed to me, and essentially sought to engage in quasi-appellate court review proceedings directed toward U.S. District Judge, Matthew F. Kennelly's issued Order of September 19, 2018 determination of defendant Casson having had violated his Fiduciary duty owed to me, and essentially sought to make a final determination against my claim of violation of Fiduciary Duty on the part of defendant Casson, as if she alone represented the defendant Commission's Article III Inquiry Board possessing the authority to carry out the ascribed function of defendant Commission's Inquiry Board under Article III, Rules 101 to 108. (*See* "Exhibit E", pgs. 1 – 5 7 p. 6, p.1 *and see* "Exhibit I" pgs. 1 – 5, paras. 1 -3)

39.     The third overt act performed pursuant to in the furtherance of the scheme: On or about the 2nd day of April, 2019, despite U.S. District Judge, Matthew F. Kennelly's September 19, 2018 issued Order cited as "Exhibit A" being attached to my November 13, 2018 filed Re-New Request For Investigation establishing the sole basis for my November 13, 2018 filed Re-New Request For Investigation against defendant Casson (*See* "Exhibit F" p. 2). Defendant Abbatemarco caused correspondence to be mailed to me requesting of me to afford her with additional documentation relevant to my November 13, 2018 submitted Renew Request For Investigation against defendant Casson, and her correspondence contained false and misleading information (A true and accurate copy

16.

of defendant Abbatmarco's correspondence of April 2, 2019 containing false and mis-leading information is attached hereto and made part of this verified complaint labeled, "Exhibit J" , p. 1, par. 2).

40.    On or about the 9th day of April, 2019, I responded to defendant Abbatemarco's April 2, 2019 request. My submitted response included a copy of my August 9, 2018 filed Second Request For Decision to U.S. District Judge Matthew F. Kennelly (*See* "Exhibit D" attached hereto), and included an additional copy of U.S. District Court N.D. Ill. Judge Matthew F. Kennelly's Order of September 19, 2018, showing a finding of facts and conclusion of law and determination that defendant Casson had violated his **Fiduciary duty** owed to me (*See* "Exhibit E" attached hereto, p. 6, paras. 1 & 2), and included a copy of defendant Abbatemarco's November 21, 2018 dated letter indicating that a copy of my complaint was going to be sent to defendant Casson for a direct response from him to my claims against him (*See* "Exhibit H" p. 2 attached hereto).

41.    In addition to my April 9, 2019 submitted correspondence to defendant Abbate-marco re-emphasizing my Re-New Request For Investigation of defendant Casson being premised upon U.S. District Judge Matthew F. Kennelly's September 19, 2018 determin-ation of defendant Casson having had violated his fiduciary duty owed to me (*See* "Exhibit K" p. 2, para. 2). My April 9, 2019 correspondence to defendant Abbatemarco equally pointed out various misrepresentation set forth by her in her correspondence of April 2, 2019, as well as recommended that the official transcripts of proceedings before U.S. District Judge, Matthew F. Kennelly be obtained, and that U.S. District Judge, Matthew F. Kennelly be sought out and interviewed about his having personal knowledge and inform-ation about the basis for my Re-New Request For Investigation against defendant Casson,

17.

and I informed defendant Abbatemarco that any renew request for investigation against defendant Casson should be tendered over to defendant Commission's Administrator to commence formal disciplinary proceedings in light of defendant Granoff's February 13, 2019 submitted filing seemingly being submitted in violation of RPC Rules 3.1, 4.1(a) and 8.4(a)(c)(d), and that all of the fraudulent and misleading statements drafted, signed and submitted by defendant Granoff, on behalf of defendant Casson, should be stricken based upon defendant Granoff's intervention and filings being submitted in violation of RPC 3.1 Meritorious Claims and Contentions (*See* "Exhibit K" pgs. 2 – 6 attached hereto).

42. On the 16th day of July, 2019, based upon U.S. District Judge, Matthew F. Kennelly's September 19, 2018 arrived at determination of defendant Casson having had violated his fiduciary owed to me. I submitted a monetary recovery claim to the Client Protection Program seeking recovery under the first, second and third eligibility basis under Covered Losses (A true and accurate copy of the July 16, 2018 filed Client Protection Program claim form pointing out the claimed loss and identifying the relevant eligibility bases for my Client Protection Program claim is attached hereto and made part of this verified complaint, labeled "Exhibit L" p. 1, para. 5, p. 2, para.17).

43. The basis for my claim of recovery from defendant Commission's Client Protection Program claim was based upon U.S. District Judge Matthew F. Kennelly's September 9, 2018 issued finding of facts and conclusion of law where a determination was made indicating that **defendant Casson had violated his fiduciary duty owed to me.** (*See* "Exhibit E" p. 6 *and see* "Exhibit L" attached hereto, p. 2, para. 17).

44. On the 25th day of July, 2019, I received correspondence from defendant Donahue, in reference to my claim for reimbursement from the Client Protection Fund,

18.

indicating that action on my claim would be stayed pending the outcome of my Request for Investigation of defendant Casson, which was assigned to the case load of defendant Abbatemarco (A true and accurate copy of defendant Donahue's July 25, 2019 correspondence is attached hereto and made part of this verified complaint labeled "Exhibit M").

45.    The fourth overt act performed pursuant to and in furtherance of the scheme: On the 5th day of August, 2019, without considering U.S. District Court Judge Matthew F. Kennelly's September 19, 2018 determination of defendant Casson having had violated his fiduciary duty owed to me (*See* "Exhibit E" p. 6, para. 2), as well as without considering the actual basis for my November 13, 2018 filed Re-New Request For Investigation against defendant Casson (*See* "Exhibit F" p. 2), and without considering the additional information and additional documentary evidence submitted in my April 9, 2018 correspondence (*See* "Exhibit K", pgs. 1 – 6) Defendant Abbatemarco issued a fallacious decision on my November 13, 2018 submitted Re-New Request For Investigation of defendant Casson, which among other things, misrepresented the basis for my November 13, 2018 submitted Re-New Request For Investigation against defendant Casson, as well as paraphrased the fraudulent and misleading statements set forth in defendant Granoff's unethical, improper, and unlawful submitted response to my Re-New Request For Investigation, and made a fallacious determination that there was not sufficient basis for further action by defendant Commission, and determined that formal disciplinary proceedings were not warranted at that time. (A true and accurate copy of defendant Abbatemarco's August 5, 2019 issued fallacious determination is attached hereto and made part of this verified

19.

complaint, labeled "Exhibit N" pgs. 1 – 2 *and see* "Exhibit I" pgs. 1 – 6 *and* see "Exhibit E" p. 6, paras. 1 & 2).

46.    Defendants Abbatemarco, Luke Andres Casson and Elizaeth A. Granoff have never attempted to use defendant Commission to engage in any form of quasi-appellate court review proceedings of a U.S. District Court Judge's issued final and appealable order involving a federal court's action in favor of a white American citizen, in the manner in which defendant Abbatemarco, defendant Luke Casson, and defendant Granoff used defendant Commission to engage in quasi-appellate court review proceedings during investigation proceedings on plaintiff Scott's November 13, 2018 submitted Re-New Request For Investigation.

47.    The fifth overt act performed pursuant to and in furtherance of the scheme: On the 16th day of August, 2019, without considering the designated three (3) Covered Loses for eligibility cited as my basis for recovering monetary relief through defendant Commission's Client Protection Fund, which basis were premised upon U.S. District Judge, Matthews F. Kennelly's September 19, 2018 arrived at determination that defendant Casson having had violated his fiduciary duty owed to me (*See* "Exhibit L" , p. 1, para. 8, p. 2, paras. 9 – 17, p. 3, para. 19).  Defendant Donahue, while echoing defendant Abbatemarco's fallacious determination of August 5, 2019, issued a Commission Rule 501(i) determination claiming that since defendant Casson has never been the subject of formal disciplinary proceedings and was not dead that my claim had been closed as ineligible with a finding that there was not sufficient basis for further action (A true and

accurate copy of defendant Donahue's August 16, 2019 issued determination is attached hereto and made part of this verified complaint, labeled "Exhibit O").

48.     The Covered Loses basis of "subject to formal disciplinary proceeding" did not remotely constitute the basis for my July 16, 2019 submitted Client Protection Program Claim. But rather, my July 16, 2019 submitted Client Protection Program Claim was clearly based upon: (1) I experienced a loss of money or property as the result of the intentional dishonesty of defendant Casson; (2) Defendant Casson wrongfully took, used, or withheld my money due to me; and (3) My loss - $283,000.00- occurred while defendant Casson was acting as my lawyer or in a fiduciary capacity related to the practice of law (*See* "Exhibit L" p. 1, para. 5, p. 2, para. 17 attached hereto).

49.     In contrast comparison to how defendant Donahue defendant Abbatemarco, and defendant Granoff selectively discriminated against, interfered with and obstructed my right to obtained my entitlement to recover monetary compensation Covered Loses' basis 1 - 3 through defendant Commission's Client Protection Program against defendant Casson's violation of his fiduciary duty owed to me. Defendant Dohahue, defendant Abbatemarco, and defendant Granoff, have never acted in collusion to block and/or discriminate against the provision of monetary recovery through defendant Commission's Client Protection Program's Cover Loses for Caucasian American claimants whom had specified their particular Covered Loses basis on their Client Protection Program claim form.

50.     That within a very short period of time after defendant Abbatemarco issued her fallacious determination of August 5, 2019. I submitted a written request directly to defendant Commission's presiding Administrator placing him on personal notice concerning

21.

the unethical, improper and unlawful events having had occurred during the Investigation phase of my Re-New Request For Investigation against defendant Casson, and I sought of defendant Commission's presiding Administrator to personal intervene and correct the wrongdoings having had occurred during the Investigation phase of my Re-New-Request For Investigation of defendant Casson.

51.   That within a relatively short period of time of my submitted written request to defendant Commission's presiding Administrator soliciting his personal investigation and intervention. As oppose to defendant Commission's presiding Administrator addressing the claims set forth in my submitted written letter to him. I received a written notice from defendant Abbatemarco indicating the defendant Commission's Administrator had referred my grievance against her, to her, to be addressed by her, and her letter further indicated that she was not going to disturb her arrived at determination of August 5, 2019.

52.   The combined professional misconduct and discriminatory behavioral practices on the part of defendants Casson, Abbatemarco, Granoff and Donahue, in this instance, as described above, was so arbitrary that it shocks the conscience and violated the very Spirit of Ill. Sup. Ct. R. Preamble: a Lawyers Responsibility, in its totality, as well as violated the very Spirit of Article I General, Rule 1 Preamble of defendant Commission's Rules for Disciplinary Proceedings Under Illinois Supreme Court Riles 701 – 777, in its totality, and was done intentionally, recklessly, carelessly, maliciously, willfully and wantonly and in gross negligence and conscious disregard toward my rights to seek and be afforded with available remedial action by way of Rule 102 of Article III The Inquiry Board, and Rule(s) 211 & 212 of Article IV The Hearing Board of defendant Commission's Rules for Disciplinary Proceedings Under Illinois Supreme Court

22.

Rule 701-777 (*See* "Exhibit P" pgs. 1 – 4 attached hereto), based upon U.S. District Judge Mathew F. Kennelly's September 19, 2018 issued determination findings of defendant Casson having had violated his fiduciary duty owed to me (*See* "Exhibit E" p. 6, para. 2 *and* *see* "Exhibit F" p. 2, para. 6 attached hereto), and was done intentionally, recklessly, carelessly, maliciously, willfully and wantonly and in gross negligence and conscious disregard toward my right to seek and to be afforded with entitlement to monetary compensation under basis 1 – 3 of defendant Commission's Client Protection Program (*See* "Exhibit L" p. 1. paras. 4 – 7, p. 2, paras. 9 – 17 *and* *see* "Exhibit Q" attached hereto), based upon U.S. District Judge Matthew F. Kennelly's September 19, 2018 issued determination findings of defendant Casson having had violated his Fiduciary duty owed to me (*See* "Exhibit E" p. 6, para. 2 attached hereto). The specific acts engaged in by defendant Granoff and Abbatemarco set forth at paras. 34 - 38 & 45 above were also unreasonable under RPC Rule 3.1 Meritorious Claims and Contentions, and the specific act engaged in by defendant Donahue set forth at paras. 47 - 49 set forth above were also unreasonable under defendant Commission (Chicago Office) Client Protection Program's basis for recovery of losses.

53. I, :Lance -Dolph :Scott, declare under penalty of perjury under the Laws of the of the United States of America that the statement set forth above are true, accurate and correct.

54. I, :Lance - Dolph :Scott, further declare under penalty of perjury under the Laws of the United States of America that the documents attached to this verified complaint cited as Exhibits A – M, are actual copies of the documents which they purport to be and are

23.

kept as part the Illinois ARDC (Chicago Office) daily business records, which is located

at 130 East Randolph Drive, Suite 1500, Municipality of Chicago, Illinois 60601-6219.

FURTHER DECLARANT SAITH NOT.

Executed On: 3 - 08 - 21

:Lance - Dolph :Scott
Plaintiff, Self-Represented

## VI. STATEMENT OF CLAIMS

## COUNT I

### Title 42 U.S.C. Section 1983 – Deprivation of Rights – Fifth & Fourteenth Amendment Due Process of the Laws Violation Claim
### (DEFENDANTS GINA ABBATEMARCO AND ELIZABETH A. GRANOFF)

55. I, plaintiff :Lance –Dolph :Scott, repeats and realleges paragraphs 1 – 5, 7, 13, 20,

29 – 41, 45, 46 & 51 – 54 of my verified original complaint as fully set forth as para-

graphs 1- 5, 7, 13, 20, 29 – 41, 45, 46, & 51-54 and made paragraph 55 of Count I of

my verified original complaint.

56. The conduct on the part of defendant Abbatemarco and defendant Granoff, as

described above, deprived my November 13, 2018 submitted Re-New Request For

Investigation against defendant Casson, Claim No. 2018 IN04450, of the right to a full,

and fair procedural due process investigation under Article II Investigation By The

Administrator of defendant Commission's Rules for Disciplinary Proceedings under

Illinois Supreme Court Rules 701 – 777, and, as such, is tantamount to a violation of Title

42 U.S.C. Section 1983, and the due process of the law clauses of the 5th & 14th Amend-

ments of the Constitution for the United States of America.

24.

57.     That as a direct and proximate result thereof I, plaintiff Scott, was injured in that I suffered being deprived of the available procedural due process under Article II Investigation By The Administrator, Rule 52 Charges and Article III The Inquiry Board, Rule 211 & 212 of defendant Commission's Rules For Disciplinary Proceedings Under Illinois Supreme Court Rules 701 – 777, as I suffered great mental anguish, and pain of mind, and I suffered the deprivation of my right to remedial action for defendant Casson's violation of his Fiduciary duty owed to me, and I suffered the deprivation of the loss of the monies entitled to him for defendant James Worthington's failure to fulfill his obligation under the entered into Settlement Agreement And Mutual General Release as guaranteed under Title 42 U.S.C. Section 1983, and under the Due Process of the Laws clause of the Fifth & Fourteenth Amendment of the Constitution for the United States of America, as described above, all to my damage, for which defendant Gina M. Abbatemarco, and Elizabeth A. Granoff, should be held tortuously liable.

**WHEREFORE**, Lance Dolph Scott, the Plaintiff, Self-Represented demand judgment against defendants **GINA M. ABBATEMARCO, LUKE CASSON, ELIZABETH GRANOFF**, jointly and severally, for Compensatory damages in the sum of **TEN-THOUSAND DOLLARS** ($10,000.00), General damages in the sum of **FIVE THOU-SAND DOLLARS** ($5,000.00), and Proximate damages in the sum of **FIVE THOU-SAND DOLLARS** ($5,000,00), and further demand judgment against defendants **GINA M. ABBATEMARCO, LUKE CASSON**, and **ELIZABETH A. GRANOFF**, individually and jointly, for Punitive damages in the sum of **THIRTY THOUSAND DOLLARS** ($30,000.00), plus the cost of this action, and any further and additional relief as this Court deems fair, just, and equitable.

25.

## COUNT II

### Title 42 U.S.C. Section 1985(3) Conspiracy To Interfere With Rights –
### 14th Amendment Equal Protection of the Laws Violation Claim
### DEFENDANTS ABBATEMARCO, CASSON AND GRANOFF
### DEFENDANT ATTORNEY REGISTRATION & DISCIPLINARY COMMISSION
### DEFENDANT ANDREOU & CASSON, LTD
### DEFENDANT LAW OFFICE OF ELIZABETH GRANOFF

58.     I, plaintiff :Lance – Dolph : Scott, repeats and realleges paras. 1 – 5, 7 – 11, 13, 14,

18 – 20, 29 – 41, 45, 46 & 50 – 54 of my verified original complaint as though fully set

forth herein as paragraphs 1 – 5, 7 – 11, 13, 14, 18 – 20, 29 – 41, 45, 46 & 50 – 54 and

made paragraph 58 of Count II of my verified original complaint.

59.     As detailed above, defendants Abbatemarco, Casson and Granoff, acting thru

defendants Illinois Attorney Registration and Disciplinary Commission (Chicago Office),

Andreou & Casson, LTD, and Law Office of Elizabeth Granoff, agreed among them-

selves to join in and act in concert as contributory participants and jointly perform vari-

ous overt acts pursuant to and in furtherance the conspiracy and scheme to abuse the proper

use of Article II Investigation By The Administrator Rule 52 Charges, and the scheme to

engage in quasi-Inquiry Board proceedings under Article III The Inquiry Board Rules

211 & 212 as a means to interfere with and circumvent my November 13, 2018 filed

ARDC Re-New Request For Investigation claim against defendant Casson's violation of

his Fiduciary Duty owed to me, as determined by U.S. District Judge, Matthew F.

Kennelly's September 19, 2018 issued Court Order, from being adjudicated under Rule

102 of Article III The Inquiry Board, and Rules 211 & 212 of Article IV The Hearing

Board of defendant Commission (Chicago Office) Rules for Disciplinary Proceedings

under Illinois Supreme Court Rules 701 – 777, and, as such, is tantamount to a violation

26.

of Title 42 U.S.C. Section 1985(3) and the Equal Protection of the Law clause of the 14th Amendment of the Constitution for the United States of America.

60.     As a direct and proximate result thereof, I, plaintiff Scott, was injured, including my November 13, 2012 filed ARDC Re-New Request For Investigation Against defendant Casson being circumvented, subject to unduly and excessive delay, subject to being improperly responded to by defendant Granoff, and I suffered the interference with my rights under Article II Rule 52, Article III Rule 102, & Article IV Rules 211 & 212 under Illinois Supreme Court Rules 701 – 777, and I suffered being discriminated against having defendant Commission (Chicago Office) Hearing Board conduct warranted disciplinary proceedings against defendant Casson's various acts of Professional Misconduct acted out in the forms of violating of his Fiduciary Duty owed to me, Breach of Contract and Conversion, and I continue to suffer the loss of my full and complete settlement monies due to me from the breach of the terms and conditions Settlement Agreement Order of August 1, 2006, and I suffered being discriminated against based upon my ethnicity/ nationality, and I suffer great mental agony, pain of mind and great emotional distress, and I suffered violation of my American citizenship rights guaranteed to me under Title 42 U.S.C. Section 1985(3) and the Fourteenth Amendment of the Constitution for the United States of America, as described above, all to my damage.

61.     Defendants Illinois Attorney Registration and Disciplinary Commission (Chicago Office), Andreou & Casson, Ltd., and Law Office of Elizabeth Granoff are being sued in this Count pursuant to the doctrine of respondeat superior.

27.

**WHEREFORE,** :Lance – Dolph :Scott, the Plaintiff, Self-Represented, demand judgment against defendants **GINA M. ABBATEMARCO, LUKE CASSON, ELIZA-BETH A. GRANOFF, ILLINOIS ATTORNEY REGISTRATION AND DISCIP-LINARY COMMISSION (Chicago Office), ANDREOU & CASSON LTD.,** and **LAW OFFICE OF ELIZABETH GRANOFF**, jointly and severally, for Compensatory damages in the sum of **TWENTY-FIVE THOUSAND DOLLARS** ($25,000.00), Discretionary damages in the sum of **FIVE THOUSAND DOLLARS** ($5,000.00), General damages in the sum of **FIVE-THOUSAND DOLLARS** ($5,000.00), and Proximate damages in the sum of **FIVE THOUSAND DOLLARS** ($5,000.00), and further demand judgment against defendants **GINA M. ABBATEMARCO, LUKE CASSON** and **ELIZABETH A. GRANOFF**, jointly and severally, for Punitive damages in the sum of **SEVENTY-FIVE THOUSAND DOLLARS** ($75,000.00), plus the cost of this action, and any further and additional relief as this Court deems fair, just and equitable.

## COUNT III

### Title 42 U.S.C. Section 1981(a) – Discrimination Against The Full And Equal Benefit of All Laws And Proceedings Violation Claim

### DEFENDANTS GINA M. ABBATEMARCO, EILEEN W. DONAHUE ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION (CHICAGO OFFICE)

62. I, plaintiff :Lance – Dolph :Scott repeats and reallegs paras. 1 – 6, 13, 20, 42 – 44, 47 – 49 & 52 – 54 of my verified original complaint as though fully set herein as paras. 1 – 6, 13, 20, 42 – 44, 47 – 49 & 52 - 54, and made para. 62 of Count III of his verified original complaint.

28.

63.     The conduct on the part of defendant Abbatemarco, Donahue and defendant Attorney Registration and Disciplinary Commission (Chicago Office), acting in collusion with defendant Granoff, as described above, discriminated against me, plaintiff Scott, being afforded entitlement to the full and equal benefit of the available monetary compensation under Covered Losses 1 – 3 basis for eligibility allowable under defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office) Client Protection Program based upon U.S. District Judge Matthew F. Kennelly's September 19, 2018 findings and determination that defendant Casson had violated his Fiduciary duty owed to me, as accorded to defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office) Client Protection Program's similarly aggrieved White American claimants whom had applied for relief under defendant Commission (Chicago Office) Client Protection Program against their contracted attorneys for engaging in various forms of Professional Misconduct, and, as such, is tantamount to a violation of Title 42 U.S.C. Section 1981(a).

65.     That as a direct and proximate result thereof, I, plaintiff Scott was injured, including being discriminated against having my July 16, 2019 filed Client Protection Program claim assessed under my designated 1st, 2nd, & 3rd eligibility basis of Covered Losses, and I was discriminated against receiving the maximum amount of monetary relief recoverable under the 1st, 2nd & 3rd eligibility basis of Covered Losses prescribed by defendant Commission (Chicago Office) Client Protection Program, and I suffered great mental agony, pain of mind, and great emotional distress, and my American citizenship rights under Title 42 U.S.C. Section 1981(a) were violated, as described above, all to my damage.

29.

66.     Defendant Illinois Attorney Registration and Disciplinary Commission (Chicago Office) is being sued in this Count pursuant to the doctrine of respondeat superior.

**WHEREFORE,** :Lance – Dolph :Scott, the Plaintiff Self-Represented, demand judgment against defendant **ILLINOIS ATTORNEY REGISTRATION AND DIS-CIPLINARY COMMISSION** (Chicago Office), individually, for Compensatory damages in the sum of **SEVENTY-FIVE THOUSAND DOLLARS** ($75,000.00), and demand judgment against defendants **GINA M. ABBRATEMARCO** and **EILEEN W. DONAHUE,** jointly and severally, for Compensatory damages in the sum of **TEN THOUSAND DOLLARS** ($10,000.00), Discretionary damages in the sum of **FIVE THOUSAND DOLLARS** ($5,000.00), General damages in the sum of **FIVE THOU-SAND DOLLARS** ($5,000.00), and Proximate damages in the sum of **FIVE THOU-SAND DOLLARS** ($5,000.00), and further demand judgment against defendants **GINA M. ABBATEMARCO** and **EILEEN W. DONAHUE**, jointly and severally, for Punitive damages in the sum of **THIRTY THOUSAND DOLLARS** ($30,000.00), plus the cost of this action and any other and further relief as this Court deems fair, just and equitable.

## COUNT IV

### NEGLIGENT BREACH OF FIDUCIARY DUTY
### (DEFENDANT LUKE CASSON)

66.     I, plaintiff :Lance –Dolph :Scott repeats and realleges paragraphs 1 – 4, 8, 13 – 28, 53 & 54 of my verified original complaint as though fully set forth herein as paragraphs 1 – 4, 8, 13 – 28, 53 & 54 and made paragraph 66 of Count IV of my verified original complaint.

67. At all times relevant to the litigation of Case No 1:04 –cv- 6532, particularly during the post-August 1, 2006 entered Settlement Agreement Order, defendant Casson owed me, plaintiff Scott, a fiduciary duty.

68. Defendant Casson intentionally breached that duty on more than one occasion and such breaches were the actual and proximate cause of harm to me.

69. Accordingly, defendant Casson is liable in damages to me, plaintiff Scott, in the full sum $250,000.00, plus the reasonable interest owed on the wrongfully cancelled $6,000.00 installment payment, the exact amount to be proven at trial, arising out of defendant Casson's intentional breaching of his fiduciary duty to me in regards to the collection of monies from Case No. 1:04-cv- 6532 defendant James Worthington's defaulting on the August 1, 2006 entered into Settlement Agreement.

### COUNT V

### CONVERSION
### (DEFENDANT LUKE CASSON)

70. I, plaintiff :Lance – Dolph :Scott, repeats and realleges paragraphs 1 – 4, 8, 13 – 28, 53 & 54 of my verified original complaint as though fully set forth herein as paragraphs 1 – 4, 8, 13 – 28, 53 & 54 and made paragraph 70 of Count V of my verified original complaint.

71. At all times relevant to the litigation of Case No. 1:04 –cv -6532, in general, and the terms and conditions of August 1, 2006 entered into Settlement Agreement's payment collection from James Worthington, in particular, defendant Casson owed me, plaintiff Scott, a legal obligation and duty to not convert my share of the settlement agreement's monies to defendant Casson's own use and benefit.

31.

72. Defendant Casson breached that legal obligation and duty on more than one occasion and such breaches were the actual and proximate cause of harm to me, plaintiff Scott.

73. Accordingly, defendant Casson is liable in damages in excess of $250,000.00, plus the reasonable interest on the wrongfully retracted $6,000.00 second installment settlement payment, the exact amount to be proven at trial.

## COUNT VI

### BREACH OF CONTRACT AND COVENANT
### OF GOOD FAITH AND FAIR DEALING
### (DEFENDANTS LUKE CASSON & ANDREOU & CASSON, LTD.)

74. I, plaintiff :Lance – Dolph :Scott, repeats and realleges paragraphs 1 -4, 8, 9, 13 –28, 53 & 54 of my verified original complaint as though fully set forth herein as paragraphs 1 – 4, 8, 9, 13 – 28, 53 & 54 and made paragraph 74 of Count VI of my verified original complaint.

75. At all times relevant to the litigation of Case No. 1:04 –cv – 6532, defendant Casson via defendant Andreou & Casson Ltd., was in a written bilateral contractual relationship with me, plaintiff Scott and owed a legal obligation and duty to me, plaintiff Scott, to act in good faith and deal fairly with me, plaintiff Scott.

76. Defendant Casson breached that legal obligation and duty on more than one occasion by wrongfully converting, taking, utilizing or managing financial interest of me, plaintiff Scott, in regards to the monies from the August 1, 2006 entered into Settlement Agreement's payment collection involving James Worthngton, defendant in Case No. 1:04 –cv- 6532.

77.    Such acts and omissions leading to defendant Casson via defendant Andreou & Casson, Ltd. breach of their legal obligation and duty to deal in good faith and fairly with me, plaintiff Scott, were the actual and proximate cause of harm to me, plaintiff Scott.

78.    Defendant Casson and defendant Andreou & Casson Ltd.'s conduct was outrageous, with their acts being done with malice or bad motives or reckless indifference to the interests of me, plaintiff Scott.

79.    Accordingly, defendant Casson and defendant Andreou & Casson Ltd., are liable in damages to me, plaintiff Scott, in excess of $250,000.00, the exact amount to be proven at trial.

## COUNT VII

### PUNITIVE DAMAGES
### (DEFENDANT LUKE CASSON)

80.    I, plaintiff :Lance – Dolph :Scott repeats and re-alleges paragraphs 1 – 4, 8, 13 – 28, 53 & 54 of my verified original complaint as though fully set forth herein as paragraphs 1 -4, 8, 13 – 28, 53 & 54 and made paragraph 80 of my verified original complaint.

81.    At all relevant times, defendant Casson owed me, plaintiff Scott a legal obligation and duty to act with due care and regard for my rights, interest, including financial interests, particularly in light of the fact that I, plaintiff Scott, placed faith in defendant Casson to utilize his full competent legal skills, training and knowledge in his ability to effectively and efficiently manage my legal affairs, particularly that of fully implementing and enforcing all of the terms and conditions of the August 1, 2006 entered into Settlement Agreement's installment payments and the penalty for defaulting on the terms and conditions of the Settlement Agreement in Case No. 1:04 – cv – 6532.

82.    Defendant Casson breached that legal obligation and duty of due care on more than one occasion and such breaches constitute outrageous conduct and reckless disregard of my, plaintiff Scott's rights, interests, including financial interests.

83.    Accordingly, defendant Casson is liable for Punitive damages to me, plaintiff Scott in excess of $50,000.00, the exact amount to be proven at trial.

### PRAYER FOR RELIEF

**WHEREFORE,**  :Lance – Dolph :Scott, the Plaintiff, Self-represented, prays for the following relief:

(a)    Judgment entered in my favor and against defendant Andreou  &  Casson  Ltd., on  Counts VI of my verified original complaint and an award of Compensatory damages of  not less  that **TWO HUNDRED FIFTY THOUSAND DOLLARS** ($250,000.00);

(b)    Judgment entered  in  my  favor  and  against defendant Luke Casson on Counts IV- VII (Punitive Damages)  of  this  verified original complaint and an award of punitive damages of not less than **FORTY THOUSAND DOLLARS** ($40, 000.00);

(c)    Such further and orther legal and equitable relief as this Court may deem fair, just and necessary under the circumstances.

### JURY DEMAND

84.    I, plaintiff :Lance –Dolph :Scott  hereby  demands  a  trial before a petit jury on all triable issues in this verified original complaint.

34.

## RESERVATION OF RIGHTS

85.    My, plaintiff :Lance - Dolph :Scott's investigation is ongoing, Scott reserves the

right to amend this verified original complaint to include additional claims and include

additional defendants should my further investigation so merit.


Respectfully submitted


By _____

:Lance – Dolph :Scott
Plaintiff Self-Represented


:Lance - Dolph :Scott
In care of 780 Sugar Creek Drive
Township of Joliet/Will County
Republic of Illinois  [60433]
Real Land North America
(815)  768-7838

35.

Exhibit

A

Search all cases and statutes...                              JX

Statutes, codes, and regulations
Illinois Court Rules
Illinois Supreme Cou...
Article VIII - Illinois ...

# Ill. Sup. Ct. R. Preamble: a Lawyer's Responsibilities

⬇ Download

As amended through November 24, 2020

Preamble: a Lawyer's Responsibilities

[1] A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.
[2] As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealings with others. As an evaluator, a lawyer acts by examining a client's legal affairs and reporting about them to the client or to others.
[3] In addition to these representational functions, a lawyer may serve as a third-party neutral, a nonrepresentational role helping the parties to resolve a dispute or other matter. Some of these Rules apply directly to lawyers who are or have served as third-party neutrals. See, e.g., Rules 1.12 and 2.4. In addition, there are Rules that apply to lawyers who are not active in the practice of law or to practicing lawyers even when they are acting in a nonprofessional capacity. For example, a lawyer who commits fraud in the conduct of a

casetext                                    Help    Sign In    Sign Up

Search all cases and statutes...                                JX

should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or other law.

[5] A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

[6] As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority.

[6A] It is also the responsibility of those licensed as officers of the court to use their training, experience, and skills to provide services in the public interest for which compensation may not be available. It is the responsibility of those who manage law firms to create an environment that is hospitable to the rendering of a reasonable amount of uncompensated service by lawyers practicing in that firm. Service in the public interest may take many forms. These include but are not limited to pro bono representation of persons unable to pay for legal services and assistance in the organized bar's efforts at law reform. An individual lawyer's efforts in these areas is evidence of the lawyer's good character and fitness to practice law, and the efforts of the bar as a whole are essential to the bar's maintenance of professionalism. To help monitor and quantify the extent of these activities, and to encourage an increase in the delivery of legal services to persons of limited means, Illinois Supreme Court Rule 756(f) requires disclosure with each lawyer's annual registration with the Illinois Attorney Registration and Disciplinary Commission of the approximate amount of his or her pro bono legal service and the approximate amount of qualified monetary contributions. See also Committee Comment (June 14, 2006) to Illinois Supreme Court Rule 756(f).


articulate an appropriate disciplinary standard regarding pro bono and public service.

[7] Many of a lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct, as well as substantive and procedural law. However, a lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession and to exemplify the legal profession's ideals of public service.

[8] A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done. So also, a lawyer can be sure that preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.

[9] In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an ethical person while earning a satisfactory living. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these Rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules. These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system.

[10] The legal profession is largely self-governing. Although other professions also have been granted powers of self-government, the legal profession is unique in this respect because of the close relationship between the profession and the processes of government and law enforcement. This connection is manifested in the fact that ultimate authority over the legal profession is vested largely in the courts.

[11] To the extent that lawyers meet the obligations of their professional calling, the occasion for government regulation is obviated. Self-regulation also helps maintain the legal profession's independence from government domination. An independent legal profession is an important force in preserving government under law, for abuse of legal authority is more

 casetext

Search all cases and statutes...    JX

in the public interest and not in furtherance of parochial or self-interested concerns of the bar. Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.

[13] Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship.

*Ill. Sup. Ct. R. Preamble: a Lawyer's Responsibilities*

Adopted July 1, 2009, effective January 1, 2010.

Next Section
Scope

Make your practice more effective and efficient with Casetext's legal research suite.

Get a Demo

Pricing

Switch

Case: 1:21-cv-01383 Document #: 1 Filed: 03/11/21 Page 42 of 119 PageID #:42

Search all cases and statutes...                                    JX

Statutes, codes, and regulations
Illinois Court Rules
Illinois Supreme Cou...
Article VIII - Illinois ...

# Ill. Sup. Ct. R. Scope

As amended through November 24, 2020

Scope

[14] The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments and the Preamble and Scope do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules. [15] The Rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general. The Comments are sometimes used to alert lawyers to their responsibilities under such othe[r] [16] Compliance with the Rules, as with all law in an open society, depen[ds]

⬇ Download

understanding and voluntary compliance, secondarily upon reinforcement by peer and public

 casetext    Help   Sign In   Sign Up

Search all cases and statutes...                                      JX

[17] Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under Rule 1.6, that attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. See Rule 1.18. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.

[18] Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the state's attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. These Rules do not abrogate any such authority.

[19] Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. The Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.

[20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary, such as disqualification of a lawyer in pending litigation. The Rules are d    ⬇ Download    e guidance to lawyers and to provide a structure for regulating conduct through disciplinary

 casetext

Search all cases and statutes...                                    JX

antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, since the Rules do establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct.

[21] The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. The Preamble and this note on Scope provide general orientation and are instructive and not directive. The Comments are intended as guides to interpretation, but the text of each Rule is authoritative.

*Ill. Sup. Ct. R. Scope*

Adopted July 1, 2009, effective January 1, 2010.

Previous Section
Preamble: a Lawyer's Responsibilities

Next Section
Rule 1.0 - Terminology

Make your practice more effective and efficient with Casetext's legal research suite.

Get a Demo

Pricing

Switch

Big firm

⬇ Download

Exhibit
B

# ATTORNEY CONTRACT

THIS AGREEMENT is entered into between attorney ANDREOU & CASSON, LTD., and KIPNIS & KAHN hereinafter collectively referred to as "Attorney", and LANCE SCOTT of the City of JOLIET, Illinois, hereinafter referred to as "Client", who agree as follows:

1.    **REPRESENTATION.** The Client agrees to employ Attorney to represent the client in a EMPLOYMENT DISCRIMINATION MATTER through trial. The Client agrees to pay the Attorney fees as hereinafter set forth and, in addition, agrees to pay all expenses incurred in the handling of the matter, including court costs, investigation expenses, mediation costs, costs of depositions, travel expenses and any other litigation costs incurred by Attorney deemed reasonably necessary by the Attorney.

2.    **NO GUARANTEE**. The Attorney will use every legal resource at its command to obtain the best results possible for the Client, however, it is agreed that the nature of the law is such that it is impossible to accurately predict the exact outcome of any case. Thus, the Attorney cannot, and does not, make any guarantees as to any given result.

3.    **LIEN.** Client hereby grants to Attorneys a lien on any recovery for the reimbursement of costs and the payment of Attorneys' fees. Client specifically assigns all claims for attorneys fees and liens to her attorneys and agrees that she will take no action to waive statutory rights to attorney fees and further, client will take any and all actions reasonably necessary to preserve the attorneys' statutory or legal right to attorney fees and/or costs.

If it becomes necessary for the Attorney to file a lawsuit against the Client to collect the attorney fees due the Attorney, the Client shall be responsible and agrees to pay for all reasonable attorney fees and cost incurred by the Attorney in such a collection proceeding.

4.    **HIRING OF ADDITIONAL COUNSEL OR EXPERTS.** In the event attorneys believe it is necessary to the case to hire experts, client will be reasonable and shall grant approval of the same, and shall pay all costs, if any, incurred or billed by said persons.

It is agreed that the Attorney, from time to time, may require the participation of other attorneys to assist him. The Attorney agrees that in the event the assistance of another attorney is required, the client shall not be obligated to pay a separate fee to such attorney unless the client agrees and consents in writing to the representation of that attorney in advance.

5.    **COSTS.** Client agrees to pay all costs or expenses associated with the Attorneys' representation of the Client, including copying costs, facsimile fees and long distance phone charges and will be billed monthly for said charges. The Attorney shall from time to time request that the Client pay accrued or anticipated expenses. The Client agrees that such expenses shall be paid in a timely manner upon request.

Z:\Case Files\Employment\Scott, Lance\Basic Agreement.doc
3/8/2004

The Attorney is not responsible to advance any expenses for or on behalf of the Client in handling this legal matter, but, in the event any expenses are advanced by the Attorney, the Client will reimburse all such costs and expenses upon request or out of any settlement, mediation award or jury verdict. The Client agrees that all out of pocket expenses incurred shall be reimbursed to the Attorney within 30 days of billing for said expenses.

6.      **FEE AGREEMENT**. In the event that the matter is tried before a jury or The bench the Client shall pay to the Attorney a fee in an amount equal to the GREATER OF **Forty Percent (40%) of any jury verdict, arbitration award or mediation award, and any amount(s) awarded by the Court pursuant to 42 U.S.C. 1988 or any comparable attorney fee recovery statute.** The Client shall be solely responsible for the payment of **an initial retainer of $1,000.00** and any additional retainer deposits as deemed necessary by the Attorney and agreed to by the Client. The Client shall also be required, from time to time, to deposit funds with the Attorney for the payment of expenses and litigation costs. The Client further agrees to pay all filing and docketing fees, investigation cost, service costs and reproduction costs. The Client agrees that the Attorney shall bill services at a maximum rate of $350.00 per hour and a minimum rate of $150.00 per hour. The Attorney's hourly fee may be adjusted from time to time as the Attorney determines is necessary.

If the case settles or favorable judgment is obtained, attorneys shall be entitled to the higher of either: (1) forty percent (40%) of any and all recovery obtained for client (including all monetary damages and all attorneys' fees); or (2) compensation for total hours worked by that attorney at the rates set forth herein, and any multiplier awarded by the Court.

In the event that judgment is obtained and attorneys are entitled to petition for fees or in the event that any other circumstances arise which provide entitlement to fees (*i.e.*, settlement), it is agreed that compensation shall be at a rate of the higher of the contingency or $350 per hour for Attorneys, as provided herein, and $100 per hour for paralegals and investigators, and increased by 5% per year, for all work performed. These rates shall not be altered except by prior agreement of the parties or by court order.

7.      **CALCULATION OF PERCENTAGE FEE.** In calculating the percentage of contingent fee referenced above, the term "recover" shall mean anything of value, including, without limitation, gross back pay, monetary damages (actual, liquidated and/or punitive), severance benefits, other fringe benefits, bonuses, commissions, pre and post judgment interest, and attorneys' fees, as well as equitable relief, including, by way of example, reinstatement and promotion.

The value of intangible relief, as an element of recovery, shall be quantified as follows:

a.  "Reinstatement" shall be quantified for the fee award as 33 1/3 percent of one year's compensation, including salary or wages, bonuses, fringe benefits, and commissions or other forms of remuneration in cash or kind that are projected to be received at the time of reinstatement, discounted to present value at the rate

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASES

This Settlement Agreement and Mutual General Release ("Agreement") is made and entered into this 23rd day of May, 2006, by and between LANCE SCOTT ("Plaintiff") as Plaintiff and JAMES WORTHINGTON ("Defendant"), as Defendant.

WHEREAS, on October 7, 2004 the Plaintiff filed his Complaint and, subsequently his First Amended Complaint on December 21, 2005, in the United States District Court for the Northern District of Illinois before Judge Matthew Kennelly entitled **Lance Scott v. James Worthington and Ehlers Construction Co, Inc., Cause No. 04 C 6532**. The Complaint alleges various violations the Plaintiff's civil rights occurring during the period of his employment.

WHEREAS, this matter is currently before Judge Matthew Kennelly;

WHEREAS, the Litigation involves allegations sounding in tort against all Defendants, and the sums to be paid to the Plaintiff are compensatory of punitive damages and personal harm and injuries allegedly suffered by the Plaintiff and caused by the Defendant, liability of which is specifically denied by the Defendant;

WHEREAS, the parties to this Agreement now wish to compromise their disputes and to conditionally terminate all of the litigation now pending;

NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:

**I. Payment**: The Parties hereto agree that JAMES WORTHINGTON shale pay to the Plaintiff a total sum of Forty Thousand and no/100 Dollars ($40,000.00) inclusive of attorney fees, costs and expenses. Payment of said sum shall be as follows:

A. WORTHINGTON shall pay the sum of Ten Thousand and no/100 Dollars ($10,000.00) to

the Plaintiff on August 15, 2006.

B. WORTHINGTON shall pay the sum of Five Thousand and no/100 Dollars ($5,000.00) to the Plaintiff on January 15, 2007.

C. WORTHINGTON shall pay the sum of Twenty-Five Thousand and no/100 Dollars ($25,000.00) on August 15, 2007.

The payment draft shall be in the name of Lance Scott and Andreou & Casson, Ltd., his attorneys, and shall not bear any other restriction not specifically provided for herein, and shall be personally delivered to the Plaintiff's attorney, Luke Casson, Andreou & Casson, Ltd., 332 South Michigan Ave., Suite 1144, Chicago, Illinois 60604, or any other place as directed. All payments made hereunder shall be by certified funds or cash and not by personal check.

## II. Release of Claims.

For good and valuable consideration, the sufficiency of which is conceded and not in dispute, the Plaintiff, LANCE SCOTT, for himself individually and his respective, agents, employees, executors, administrators, insurers, predecessors, successors, trustees, assignees, affiliated companies, heirs, assignees and legal representatives, does hereby waive, release and forever discharge the Defendant, JAMES WORTHINGTON, and this respective spouses, members, officers, directors, agents, owners, employees, shareholders, executors, administrators, insurers, predecessors, successors, trustees, assignees, affiliated companies, heirs, assignees, attorneys and legal representatives from any and all claims, actions, causes of action, complaints, grievances, demands, allegations, promises, damages, responsibilities, agreements, contracts, controversies, liabilities and obligations of whatever kind, nature or description, known or unknown, direct or indirect, in contract

2

Defendant.

### IV. Dismissal of Lawsuit.

Promptly after the execution and delivery of this Agreement, the Plaintiff, LANCE SCOTT, shall cause all of his claims against the Defendant, JAMES WORTHINGTON, to be voluntarily dismissed with prejudice, and the Court shall retain jurisdiction to enforce the terms of the conditional judgment and this Agreement.

### V. Assignment of Rights.

The Defendant, JAMES WORTHINGTON, assigns all rights and interest in any claims, actions or suits for reimbursement, payment and coverage he may have against Ehlers Construction Co., Inc., Susan Ehlers, the Estate of Terry Ehlers, or their insurers or guarantors, to the Plaintiff, LANCE SCOTT.

### VI. Default.

The Defendant, JAMES WORTHINGTON, agrees that in the event of default as to any payment made hereunder, including late payment, final judgment shall be entered against him and he shall be liable for the payment to the Plaintiff, LANCE SCOTT, of the conditional judgment in the amount of One Hundred Thousand and no/100 Dollars ($100,000.00), plus attorney fees of $16,675.00 and costs of $1,234.44, as provided for in paragraph III above, and prejudgment and post judgment interest at a rate of 9%. In addition, the Defendant, JAMES WORTHINGTON, shall be solely responsible for all costs of collection, including any additional attorney fees and costs.

### VII. Voluntary Agreement.

This Agreement has been fully and voluntarily entered into by each party hereto after opportunity to consult with legal counsel with regard to its legal effect. By their signatures below,

4

Each party represents that they have read and understand this Agreement and all of its terms and agree to be bound by its terms.

### VIII. Fully Integrated Agreement.

This Agreement is a fully integrated agreement and contains the entire agreement between the parties hereto. This Agreement may not be altered, amended, modified or otherwise changed except by a written agreement executed by a duly authorized representative of each party hereto.

### IX. Governing Law.

This Agreement shall be construed under and governed by Federal law and the laws of the State of Illinois, exclusive of the choice of law principles thereof.

### X. Authority of Parties Executing Agreement.

The person or persons executing this Agreement for and on behalf of the respective parties, represent and warrant that they have the full right, power and authority to bind said parties in and on their behalf.

### XI. Binding on Successors.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, estates, trustees, successors and assigns.

### XII. Severability.

The invalidity of any provision of this Agreement shall not impair the validity of any other provision, and if any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable, that provision shall be deemed severable, and the Agreement shall be enforced with that provision severed or as modified by the court.

### XIII. Execution.

5

### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LANCE SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04 C 6532 |
| | ) | |
| EHLERS CONSTRUCTION CO., INC. and | ) | Judge Matthew Kennelly |
| JAMES WORTHINGTON | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| | ) | |

## PLAINTIFF'S MOTION TO CORRECT AGREED JUDGEMENT ORDER

NOW COMES the Plaintiff, by his counsel, Andreou & Casson, Ltd., and respectfully moves for the entry of default judgment against Defendant Ehlers Construction, Inc. and in support thereof states as follows:

1. The Court entered the Parties' Agreed Judgment Order on May 31, 2006.

2. Paragraph 2 of the Agreed Judgment Order reads as follows: "The Court finds and enters judgment against Worthington and *in favor of Ehlers* in the amount of One Hundred Thousand and no/100 Dollars ($100,000.00)."

3. The highlighted passage of the order in incorrect and paragraph 2 should read as follows: "The Court finds and enters judgment against Worthington and *in favor of Scott* in the amount of One Hundred Thousand and no/100 Dollars ($100,000.00)."

4. The parties are in agreement on the entry of the Amended Agreed Judgment Order.

WHEREFORE, the Plaintiff respectfully requests that the Court enter an amended

agreed judgment order consistent with the attached order and for all other relief just and

proper in the premises.

> Respectfully submitted,
> Andreou & Casson, Ltd.
>
> By: _/s/Luke A. Casson_
> Luke A. Casson

Luke A. Casson
Andreou & Casson, Ltd.
332 South Michigan Ave., Suite 1144
Chicago, Illinois 60604

Exhibit
C

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF ILLINOIS*
*EASTERN DIVISION*

| | | |
|---|---|---|
| **LANCE D. SCOTT,** | ) | |
| | ) | CIVIL ACTION NO. |
| Self-Represented Plaintiff, | ) | 1:04-CV-6532 |
| | ) | |
| -vs- | ) | |
| | ) | |
| **EHLERS CONSTRUCTION,** | ) | Matthew F. Kennelly |
| **JAMES WORTHINGTON,** | ) | United States District Judge |
| | ) | Presiding |
| Defendants. | ) | |

# PLAINTIFFF'S MOTION TO ENFORCE SETTLEMENT AWARD ENTERED ON 8/1/2006

## INTRODUCTION

**COMES NOW** the Self-Represented Plaintiff, **LANCE D. SCOTT** ("Scott") by and through its beneficiary and authorized representative, Lance Dolph of the Scott family, reserving all rights and waiving none, ever, and submit this motion to enforce judgment entered on 8/1/2006 seeking of this Court to issue a order directing the defendants to comply with the settlement award entered by this Court on 8/1/2006, against them, without any further unnecessary delay.

## PROCEDURAL BACKGROUND

On or about the 1st day of August, A.D., 2006, this Court entered a judgment in the sum of **TWO HUNDRED FIFTY THOUSAND DOLLARS** ($250,000.00), against the defendants.

## ARGUMENT

Lance Dolph of the Scott family contend that this Court should issue a order commanding the defendants to comply with this Court's entered settlement award of 8/1/2006, without any further unnecessary day, for the following reason which will provide a complete bases for this

Court to command the defendants to comply with this Court's entered judgment of 8/1/2006, without any further unnecessary delay.

It was been in excess of twelve (12) years since this Court's entry of judgment in the sum of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00), against the defendants, and the defendants have thus far failed to comply with this Court's entered judgment of August 1, 2006, against them.

Surely, this Court will agree that once it enters a judgment against a party. Then, that party is required to comply with the directives set forth in the entered judgment against it.

Surely, this Court will agree that the defendants are not exempt from complying with this Court's directives set forth in the entered judgment of August 1, 2006, against them.

The failure on the part of the defendants to comply with the directive set forth in the entered judgment of 8/1/2006 requires of this Court to enter a order commanding the defendants to fully comply with the directives set forth in the entered judgment of 8/1/2006, without any further unnecessary delay, or face the available penalties for engaging in an act of civil contempt of Court.

Furthermore, after attorney, Luck Casson, sent plaintiff Scott a check for six thousand dollars ($6,000.00) of the ten thousand dollars ($10,000.00) from which he kept four thousand dollars ($4,000.00) of the top for himself. He, attorney, Luke Casson, placed a stop payment on the six thousand dollars ($6,000.00) which plaintiff Scott has entitled to possess, thereby defrauding plaintiff Scott out of his entitlement to that six thousand dollars ($6,000.00). Therefore, this Court should command attorney, Luke Casson, to restore plaintiff Scott

4

with the six thousand dollars ($6,000.00) which plaintiff Scott was entitled to receive, plus command attorney, Luke Casson, to pay to plaintiff Scott a reasonable interest fee for each and every year after he put a stop payment on the six thousand dollars ($6,000.00) check which he, attorney Luke Casson, sent to plaintiff Scott and caused to be cancelled after plaintiff Scott had received and had deposited the check in his bank account.

## CONCLUSION

Based upon the aforementioned, the fairest and just decision for this Honorable Court to make, as a Guardian of the Law, would be that of issuing a order commanding the defendants to comply with the directives set forth in the entered judgment of 8/1/2006, without any further unnecessary delay, plus pay the annual accumulated interest on the TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00), and command attorney, Luke Casson, to tender over the six thousand dollars ($6,000.00), which he defrauded plaintiff Scoot out of, plus pay a reasonable interest on the six thousand dollars ($6,000.00), and anyfurther and additional relief as this Court deems fair, just, proper, and equitable.

Granting this motion will serve the ends of Justice and will not prejudice any party.

*WHEREFORE,* the Self-Represented Plaintiff, **LANCE D. SCOTT** ("Scott") beseeches this Honorable Court to issue a order consistent with the requested relief sought in this motion to enforce settlement award entered on 8/1/2006.

5

*Respectfully submitted*

By _____

:Lance – Dolph: Scott
Beneficiary and Authorized Representative
for the Estate of
**LANCE D. SCOTT**
Self-Represented Plaintiff

:Lance – Dolph: Scott
In care of 780 Sugar Creek Drive
Township of Joliet
Republic of Illinois  [60433]
(815) 768-7828
Real Land North America

6

Exhibit
D

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF ILLINOIS*
*EASTERN DIVISION*

**RECEIVED**

LANCE D. SCOTT,                                )

    Self-Represented Plaintiff,        )

-vs-                                                           )

EHLERS CONSTRUCTION,               )
**JAMES WORTHINGTON,**              )

    Defendants.                                 )

CIVIL ACTION NO.
1:04-cv-6532

**AUG 0 9 2018**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Matthew F. Kennelly
United States District Judge
Presiding

## PLAINTIFFF'S SECOND LR 78.5 MOTION REQUEST FOR DECISION

### INTRODUCTION

**COMES NOW** the Self-Represented Plaintiff, **LANCE D. SCOTT** ("Scott") by and through his beneficiary and authorized representative, :Lance - Dolph of the Scott family, reserving all rights and waiving none, ever, and submit his second LR 78.5 motion requesting decision on plaintiff's fully briefed motion to enforce judgment entered on 8/1/2006, seeking to have this Court to hand down its order directed toward plaintiff's motion to enforce judgment entered on 8/1/2006, without any further unnecessary delay.

### PROCEDURAL BACKGROUND

On the 22nd day of March, A.D., 2018. Plaintiff Scott filed and served his reply in further support of his motion to enforce settlement award entered on 8/1/2006, thereby closing out the briefing on his motion to enforce settlement award entered on 8/1/2006.

On or about the 8th day of May, 2018, this Court, among other things, issued a directive requiring plaintiff Scott to produce for this Court's inspection all bank deposits and withdraws during the time period November, 2007 to March, 2008.

During the scheduled status hearing of 31st day of May, 2018, this court neglected to request of plaintiff Scott to tender over the various documentation which this Court directed plaintiff

2.

3

Scott to produce during the status hearing of May 8, 2018. And, this Court subsequently afforded the defendant Worthington in excess of an additional sixty (60) days to produce documentary evidence from his Bank Account's transactions, for the time period in question, to disclose the date and the identity of the individual who directly received the settlement payment check, in question.

## ARGUMENT

LR 78.5, in relevant part, states; "Any party may on notice provided for by LR 5.3 call a motion to the attention of the Court for decision."

In this present case approximately forty-eight (48) days had elapsed since the closing of this Court's briefing schedule on plaintiff's motion to enforce settlement award entered on 8/1/2006, after which this Court afforded attorney Luke Casson and the defendant Worthington's attorney with a total of sixty-six (60) days to produce documentary evidence disclosing the identity of the individual whom defendant Worthington directly issued approximately $15,000.00 anytime prior to or shortly thereafter attorney Luke Casson placed a stop payment on the $6,000.00 check which defendant Luke Casson issued to plaintiff Scott that was subsequently deposited in his Checking Account at First Mid-West Bank, in the Municipality of Joliet.

Upon reflective thinking, this Court will recall defendant Worthington's only representations to this Court, under sworn oath, was that he had inadvertently throw the file away concerning matters pertaining to plaintiff Scott and that he did remember sending out a settlement payment check but he could not remember whether or not he mailed the settlement payment check either to attorney Luke Casson, or to plaintiff Scott. After plaintiff Scott complied with this Court's directive to pay the estimated $300.00 service fee for defendant Worthington's bank to conduct a search of his banking records for the time period in question. And after this Court allowed defendant Worthington's second attorney an additional twenty-one (21) days to produce the documentary evidence which either would support, or would not support attorney Like Casson's written representation to this court that upon

3.

4

his information and belief there existed justification for him to place a stop payment of the $6,000.00. Defendant Worthington's second Lawyer now represent that defendant Worthington had monies transferred from his business account to his personal account which may have a copy of the settlement payment check issued from him directly to somebody else (who?). This Court has afforded defendant Worthington and attorney Luke Casson with three (3) bits at the put up or shut up apple, and defendant Worthington and attorney Luke Casson have utterly failed to prove to this Court that the representations which they verbally made before this Court, as well as presented in writing to this Court have not been presented in "bad faith".

Surely, this Court will agree that it has afforded sufficient time either for defendant Worthington, or for attorney Luke Casson, to make all reasonable efforts to produce the required documentary evidence to confirm the identity of the individual who received the payments in question, on the agreed upon settlement payment, within a reasonable amount of time either before, or after attorney Luke Casson personally placing his "Stop Payment" on the six thousand dollar ($6,000.00) settlement payment to plaintiff Scott. This Court should take notice of the documents attached to this second request, which complies with this Court's directive to plaintiff Scott per this Court's issued order of 8th day of May, 2018, clearly illustrate that no such settlement payment check was received directly from defendant Worthington to plaintiff Scott, during the time period in question, which attorney Luke Casson has fraudulently and dishonestly represented to this tribunal, in clear violation of RPC Rule 8.4 et seq. Therefore, this Court should hand down its decision on plaintiff Scott's motion to enforce settlement award of 8/1/2006, without any further unnecessary delay, as well as impose the appropriate sanction upon attorney Luke Casson, as this Court, in "Open Court" assured plaintiff Scott that it would equally impose upon attorney Like Casson upon the failure on his part to produce any documentary evidence to substantiate any of his representations presented before this Tribunal, particularly his verbal statement during the first court hearing in this matter when he claimed that he did not recall what happen.

## CONCLUSION

Based upon the aforementioned, the fairest and just decision for this Honorable Court to make, as a Guardian of the Law, would be that of issuing a order directed toward plaintiff Scott's motion to enforce settlement award of 8/1/2006, which has been fully briefed in excess of ninety (90) days, and impose upon attorney Luke Casson the proper sanction which his professional misconduct warrant, and direct defendant Worthington's attorney to immediately reimburse plaintiff Scoot with his three hundred dollars ($300.00). plus the cost of the Priority Class mailing.

Granting the motion to enforce settlement award of August 1, 2006, will greatly facilitate the proper administration of Justice, as well as will afford him with the full amount of monies he is entitled to posses per the Settlement Award of 8/1/2006.

**WHEREFORE,** :Lance – Dolph of the Scott Family, the Beneficiary and the Authorized Representative for the Estate of the Self-Represented Plaintiff, **LANCE D. SCOTT** ("Scott") respectfully beseeches this Honorable Court to hand down its determination consistent with the information and documentation, which has been made part of the **record,** as pointed to this Court's attention in this second LR 78.5 motion request for decision, without any further unnecessary delay.

5.

6

*Respectfully submitted*

By _____

:Lance – Dolph: Scott
Beneficiary and Authorized Representative
for the Estate of
**LANCE D. SCOTT**
Self-Represented Plaintiff

:Lance – Dolph: Scott
In care of 780 Sugar Creek Drive
Township of Joliet
Republic of Illinois [60433]
(815) 768-7828
Real Land North America

6.

7

Exhibit
E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LANCE SCOTT,                          )
                                      )
            Plaintiff,                )
                                      )
    vs.                               )     Case No. 04 C 6532
                                      )
EHLERS CONSTRUCTION, INC.             )
and JAMES WORTHINGTON,                )
                                      )
            Defendants.               )

## ORDER ON LANCE SCOTT'S MOTION TO ENFORCE

Back in 2004, Lance Scott, represented by attorney Luke Casson, sued his

former employer Ehlers Construction Co. and James Worthington, a supervisor at

Ehlers, alleging discrimination based on race. In April 2006, the Court entered a default

judgment against Ehlers in the amount of $283,505.44. That judgment likely is

uncollectible. In May 2006, Scott and Worthington reached a settlement set out in a

written agreement. Worthington agreed to pay Scott $40,000 in three installments

($10,000, $5,000, and $25,000) in return for a release of Scott's claims. In the

agreement, however, Worthington agreed to entry of a "conditional judgment" against

him for $119,939.44 ($100,000 for Scott; attorney's fees of $18,705.00; and costs of

$1,234.44). The judgment would remain in effect until Worthington paid the $40,000 in

full.

On August 1, 2006, the Court entered an amended judgment order that stated:

This matter coming before the Court upon the Parties' Agreement
for entry of an Amended Judgment Order, the Court being duly advised in
the premises, now ADJUDGES, DECREES AND ORDERS as follows:



1. The Court finds that the parties, Lance Scott and James Worthington, have reached an agreement which resolves all remaining issues in this case.

2. The Court finds and enters judgment against Worthington and in favor of Scott in the amount of One Hundred Thousand and no/100 Dollars ($100,000.00).

3. The Court awards and enters judgment against Worthington for attorneys fees to Andreou & Casson, Ltd. in the amount of attorney fees of Eighteen Thousand Seven Hundred Five and no/100 Dollars ($18,705.00) and costs of One Thousand Two Hundred Thirty-Four and no/100 Dollars ($1,234.44).

4. The Court finds and the parties agree that the billing rate for Andreou & Casson, Ltd. of $350.00 is reasonable and attorney fees awarded herein are awarded on that basis.

5. The Court shall retain jurisdiction to enforce the agreements of the parties and this matter is DISMISSED pursuant to Fed. R. Civ. P. 41(a).

Dkt. no. 57. The Court notes that the judgment order was, at least on the surface, a bit self-contradictory: it is arguably somewhat odd to enter a money judgment in the plaintiff's favor and at the same time dismiss the plaintiff's case. The Court finds, however, that the import of the judgment order—consistent with the parties' settlement agreement—was to enter a $119,939.44 judgment in Scott's favor that would be vacated only if Worthington complied in full with the settlement agreement's term requiring him to pay Scott $40,000 in installments.

Worthington made the first two of the three installment payments on the settlement in August 2006 and January 2007. The payments were made to Casson's law firm. Scott's contract with Casson said that he would pay Casson forty percent of any recovery. The first payment was $10,000; Casson paid Scott sixty percent, or $6,000. The second payment was $5,000; Casson paid Scott $1,751.56, representing

2

sixty percent, or $3,000, less lawsuit-related expenses of $1,248.44.

Worthington then asked to delay the third payment of $25,000. Ultimately Scott agreed to accept payment of the $25,000 in two installments, $10,000 and $15,000. Worthington made the $10,000 payment in December 2007, and Casson issued a check to Scott for sixty percent, or $6,000. Casson says that within a few days after this, Worthington contacted him and said that Scott had asked him to pay the remaining $15,000 directly to Scott, bypassing Casson's law firm. Upon learning this, Casson stopped payment on the $6,000 check to Scott. Casson sent Scott a letter dated December 27, 2007 saying what he was doing. The letter went on to say that because Worthington would be paying the last $15,000 directly to Scott, Casson's retention of the full $10,000 from Worthington's previous payment made Casson and Scott square, as $10,000 is forty percent of $25,000.

About ten years later, Scott filed a *pro se* motion asking the Court to enforce the settlement. The motion is directed against both Worthington and Casson. Scott says that Worthington did not actually pay him the last $15,000 and that Casson "has (falsely) alleged that plaintiff Scott directly received [monies] from Mr. Worthington." Scott seeks enforcement of the agreements, including an order directing Casson to pay him the $6,000.

Both Casson and Worthington have had an opportunity to address Scott's allegations both in writing and orally. And the Court has attempted to get to the bottom of things: it required Worthington and Scott to produce their bank records from the relevant period. Scott's records reflected no deposit of $15,000, and Worthington's reflected no payment of $15,000. The most Worthington can say—by way of an

3

affidavit—is that "on information and belief" he made a $15,000 payment to Scott. That statement isn't worth much. Worthington's bank records from the relevant period have been scoured and show no payment, and he does not suggest that he paid Scott in currency. Scott, for his part, has steadfastly denied ever getting payment of the final $15,000. Casson concedes that he stopped payment on the $6,000 check but says that he was justified in doing so because Scott, by asking Worthington to pay him directly, was attempting to circumvent his contract with Casson. Casson does not, however, claim any direct knowledge that Worthington paid Scott directly; Casson alleges this only "upon information and belief."

The Court makes the following findings based on the record presented:

- Casson contends that Scott breached their contract by asking Worthington to make the last payment directly to him. That request by itself was not a breach of the "attorney contract" between Scott and Casson. *See* Dkt. no. 65, Ex. 3. Nothing in the contract said or suggested that amounts paid in settlement were to go to Casson initially rather than to Scott. The contract grants Casson a lien for attorney's fees that applies to any recovery, but that's not the same as requiring a settling party to make payment to Casson rather than to Scott. There would have been a breach only if Worthington had actually paid Scott and then Scott had refused to remit Casson's forty percent share. But that never happened.

- Casson had no actual knowledge that Worthington paid the last $15,000 to Scott directly. He simply assumed it and then engaged in self-help based on his assumption.

- There is no evidence that Worthington paid the last $15,000 directly to Scott.

Worthington says that if he hadn't paid Scott, then it stands to reason that he would have declared the outstanding debt in his bankruptcy filed several years later, and that because he didn't declare the debt, that means he must have paid Scott. Again, however, if there had been a payment there would be bank records to support it, and there are none. In any event, Worthington's reasoning is a *non sequitur*. It is just as likely that once Worthington saw the dispute between Scott and Casson, he saw the opportunity to avoid payment altogether and then didn't declare the debt in bankruptcy because he had forgotten about it or wanted to take the position that it no longer existed. One way or another, however, if Worthington had made the $15,000 payment to someone, one would expect there to be some record of it. But there is none. The Court finds that the last $15,000 was not paid by Worthington.

- Scott did not breach his agreement with Casson because he (Scott) did not receive any funds in settlement on which he failed to pay Casson's share.

What are the legal consequences of these findings? As indicated earlier, a judgment for $119,939.44 was entered in favor of Scott and against Worthington. That judgment was to be vacated only if Worthington paid the agreed-upon settlement in full. He did not, so the judgment is still in effect. In short, Scott has a judgment against Worthington for $119,939.44 that he may attempt to collect upon if he wishes.[1] Scott must follow established procedures to do this. See Fed. R. Civ. P. 69(a). This will be difficult for Scott do on his own, so he would be well advised to retain counsel.

---

[1] Even though Worthington later filed for bankruptcy, he concedes that he did not schedule the debt, and the bankruptcy is now closed, so the debt has not been discharged. See 11 U.S.C. § 523(a)(3)(A).

5

As for Casson, he previously argued that that the Court lacked jurisdiction to do anything at all, and the Court rejected the argument. *See* Order of May 8, 2018 (dkt. no. 67). This argument was clearly wrong with respect to the judgment the Court entered against Worthington; a court always retains jurisdiction to enforce its own judgment. *See, e.g., HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 787 n.1 (7th Cir. 2015). As for enforcement of Scott's agreement with Casson, the Court's jurisdiction is arguably less clear. This does not mean, however, that Casson is off the hook. The Court certainly has the authority to address an allegation of misconduct by Casson while acting as counsel in a case that was before the Court.

Casson essentially says that he engaged in self-help to carry out his contract with Scott. He contends that Worthington said Scott asked him to make the last $15,000 payment directly to Scott. But as indicated above, that by itself would have not breached the Scott-Casson agreement. And as Casson effectively concedes, he did nothing to attempt to confirm that Worthington was in fact making a payment directly to Scott. Rather, Casson just took Worthington's word for it—the word of an adversary in litigation—and then acted to protect his own interests. Even though Casson and Scott were not exactly on the same page at that point, Scott was still Casson's client, and thus Casson still owed Scott a fiduciary duty. Casson did not act appropriately in jumping to a conclusion and then acting in his own financial interest to Scott's detriment. *See generally Kling v. Landry*, 292 Ill. App. 3d 329, 336, 686 N.E.2d 33, 39 (1997) ("When in the course of his professional dealings with a client, an attorney places his personal interest above the interest of the client, the attorney is in breach of his fiduciary duty by reason of the conflict."). As a result, Casson ended up with far more than his forty

6

percent share of the amount actually paid in settlement.

The Court appreciates that, at the time, Casson likely felt that he had was being end-run by his client and then acted in haste. For this reason, the Court will defer for 21 days reporting Casson to the appropriate disciplinary authorities (either the Executive Committee of this Court, or the Illinois Attorney Registration and Disciplinary Commission, or both). If Casson repays Scott the $6,000 within that period, the Court will forego any such reporting. Casson is directed to file a status report with the Court on October 12, 2018.

## Conclusion

The Clerk is directed to add plaintiff Lance Scott's address to the docket and is to send him a copy of this order. The address is: Lance Scott, 780 Sugar Creek Drive, Joliet, IL 60433. Based on the Court's rulings as set forth in the body of this order, it terminates Scott's motion to enforce [dkt. no. 61] and his motion requesting a decision [dkt. no. 77]. Attorney Luke Casson is directed to file a status report as described in the body of this order on October 12, 2018.

Date: September 19, 2018

MATTHEW F. KENNELLY
United States District Judge

7

Exhibit

F



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

RENEW

**REQUEST FOR INVESTIGATION**

Use this form to request an investigation of:
1) an Illinois lawyer;
2) a non–Illinois lawyer who has provided legal services in Illinois; or
3) a non–lawyer who you are claiming has engaged in the unauthorized practice of law in Illinois.

Return the completed form by mail or facsimile to:

| ARDC | | ARDC |
|---|---|---|
| 130 E. Randolph Dr., Ste. 1500 | | 3161 W. White Oaks Dr., Ste. 301 |
| Chicago, IL 60601-6219 | **or** | Springfield, IL 62704 |
| Phone: (312) 565-2600 or (800) 826-8625 | | Phone: (217) 546-3523 or (800) 252-8048 |
| Fax: (312) 565-2320 | | Fax: (217) 546-3785 |

---

1. Your name: Lance Dolph Scott
Street address: 780 Sugar Creek Drive
City: Joliet          State: Illinois          Zip: 60433
Home phone:          Work phone:          Cell phone: (815) 768-7828
E-mail address:

2. Name of lawyer/person you want to be investigated:
Name of law firm or business: Andreou & Casson, Ltd
Street address: 661 W. Lake Street, Suite 2N1
City: Chicago,          State: Illinois          Zip: 60661
Phone: (312) 767-4320
E-mail address:

3. Have you previously contacted the ARDC regarding this matter?   Yes ☒   No ☐
If yes, when and how did you contact us?

4. Did you employ the lawyer/person you are complaining about:   Yes ☒   No ☐
4a. If you answered yes to question 4:
When did the employment start?
What was the fee agreement?

Ex B

How much have you paid the lawyer/person to date?

I had entered into a contractual relationship with him to serve as my agent authorized to handle a civil litigation matter on my behalf

5. If your request relates to a court case or other proceeding, please provide the following:

Name of court or agency: U.S. District Court N.D. Ill 219 S. Dearborn Street, Chicago, Illinois

Name of case: Lance Scott v. Ehlers Construction, Inc. & James Worthington

Case number: 1:04-cv-6532

6. Please explain your complaint(s). Include important dates and names of witnesses and others involved. Use additional pages if necessary. Attach copies of documents that support your complaint, such as fee agreements, receipts, checks, letters and court papers.

On the 19th day of September, A.D., 2018, U.S. District Judge, Matthew F. Kennelly arrived at the determination that attorney Luke Casson violated his fiduciary duty owed to me in connect. with his conduct during the post settlement time period of Case No. 04 C 6532 (see "Exhibit A" Order On Lance Scott's Motion To Enforce, pgs. 1-7).

As a direct result of Attorney Luke Casson breaching his fiduciary duty owed to me, I have suffered a delay in receiving entitled to settlement monies, all settlement monies in connection with this matter, Case No. 04 C 6532. Therefore, I am seeking of the Commission to commence disciplinary proceeding against attorney Luke Casson for engaging in conduct forbidden by Rule of Professional Conduct Rule 8.4(a) (b)(c)(d), and that Luke Casson be required to pay me a reasonal interest fee for each year that he wrongfully seized and held onto my $6,000.00, and that I be compensated through the Client Protection Fund in the sum of $10,000.00.

Signature: _Lance D. Scott_          Date: _11-13-18_

Exhibit
G

## RULES OF THE ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION

**For Disciplinary Proceedings**
**Under Illinois Supreme Court**
**Rules 701-777**

## Article I General

### RULE 1    Preamble

It is the policy of the Commission that disciplinary and unauthorized practice of law matters be handled expeditiously, with due regard to the right of the respondent to have adequate time to prepare his defense. The courts, the public, the bar, and the respondents have a vital interest in an early determination of any charge which bears upon the fitness of an attorney to practice his profession or an allegation of unauthorized practice of law. The elimination of unnecessary delay was a major objective of the Court in creating the Commission and in establishing the office of Administrator. Implementation of this objective is one of the principal purposes of the following rules.

(Amended, December 7, 2011, effectively immediately.)

### RULE 2    Definitions

As used in these rules:

(a) **Misconduct**. Misconduct is behavior of an attorney which violates the Illinois Rules of Professional Conduct.

(b) **Charge**. A charge is information which may constitute an allegation of misconduct by an attorney or an allegation of unauthorized practice of law.

(c) **Chair**. The Chair is a person designated by the Commission to serve as chairperson of an Inquiry Board panel or a Hearing Board panel.

(d) **Respondent**. A respondent is an attorney charged with misconduct or under investigation by the Administrator or a person, whether an individual, entity or association, charged with the unauthorized practice of law or under investigation under an allegation of the unauthorized practice of law.

(e) **Complaining Witness**. A complaining witness is a person who makes a charge of misconduct or an allegation of the unauthorized practice of law.

(f) **Clerk**. The Clerk of the Commission is the person designated by the Administrator to receive, keep and maintain the files, pleadings, records, documents, evidence and other papers of the various panels and boards related to the work of the Commission and its Boards.

(Amended, effective July 25, 1986; amended, effective April 15, 1994; Amended, December 7, 2011, effectively immediately; amended January 25, 2017, effective immediately.)

### RULE 3    Construction

The masculine form of a word includes the feminine. Except for proper nouns, the singular form includes the plural and the plural the singular.

### RULE 4    Term Limits

(a) **General Rule.** Commission appointments of board members shall be limited to nine consecutive annual terms, except as otherwise provided in this rule.

**ARDC**
ATTORNEY REGISTRATION & DISCIPLINARY COMMISSION
OF THE SUPREME COURT OF ILLINOIS

WEBSITE INFORMATION | SEARCH SITE | HOME

Lawyer Search

Lawyer Registration

How to Submit a Request
For Investigation

Rules and Decisions

Ethics Inquiry Program

Publications

New Filings, Hearing
Schedules and Clerk's Office

Client Protection Program

Resources & Links

ARDC Organizational
Information

# ARDC Mission Statement

The mission of the ARDC is to promote and protect the integrity of the legal profession, at the direction of the Supreme Court, through attorney registration, education, investigation, prosecution and remedial action.

As an administrative agency of the Supreme Court of Illinois, the ARDC assists the Court in regulating the legal profession through attorney registration, education, investigation, prosecution and remedial action.

Through our annual registration process, we compile a list of lawyers authorized to practice law. We provide ready access to that list so that the public, the profession and courts may access lawyers' credentials and contact information.

We educate lawyers through seminars and publications to help them serve their clients effectively and professionally within the bounds of the rules of conduct adopted by the Court. We provide guidance to lawyers and to the public on ethics issues through our confidential Ethics Inquiry telephone service.

The ARDC handles discipline matters fairly and promptly, balancing the rights of the lawyers involved and the protection of the public, the courts and the legal profession. Grievances are investigated confidentially. Disciplinary prosecutions are adjudicated publicly and result in recommendations to the Court for disposition. Our boards consist of independent, diverse groups of volunteer lawyers and non-lawyers who make recommendations in disciplinary matters.

We advocate for restitution and other remedial action in disciplinary matters. We seek to provide reimbursements through our Client Protection Program to those whose funds have been taken dishonestly by Illinois lawyers who have been disciplined.

Approved by the ARDC Commission on April 16, 2010

Exhibit H

(b) **Applicability of Term Limits**. Except as provided in paragraphs (c) and (d) of this rule, term limits apply to consecutive appointments of board members to the same position on the same board. An appointment to a different position or to a different board or an appointment following a break in service of at least one year shall be deemed to be the first appointment toward the nine consecutive appointment term limit for that position. The Inquiry Board, the Hearing Board, the Oversight Committee, the Client Protection Review Panel and any other body established by the Commission pursuant to these rules shall be deemed different boards. The positions of chair and of member of a panel of any of these bodies shall be deemed different. Term limits shall not affect an appointment that continues until further order pending the completion of the Commission's annual appointment process.

(c) **Chairs of Hearing Board Panels.** Commission appointments of Chairs of Hearing Board panels shall be limited to twenty annual terms.

(d) **Implementation.** The term limit provisions of this rule shall be implemented over a five year period, beginning with appointments for 2013, except for term limits set forth in paragraph c.

(Adopted, January 2, 2012, effective February 28, 2013; amended April 20, 2018, effective May 15, 2018.)

**RULES 5 through 50        Reserved.**

## Article II Investigations By The Administrator

### RULE 51    Initiation of an Investigation

The Administrator may initiate an investigation on his own motion based upon information from any source.

### RULE 52    Charges

Charges received by the Administrator shall be in writing, shall identify the respondent and the person making the charge, and shall be sufficiently clear to apprise the respondent of the misconduct or unauthorized practice charged. In his discretion, the Administrator may provide assistance at his office to persons desiring to make a charge and may furnish forms for that purpose. The Administrator is not required to investigate any charge which does not meet the requirements of this rule, although in his discretion he may do so.

(Amended, effective July 25, 1986; amended, effective April 15, 1994; Amended, December 7, 2011, effectively immediately.)

### RULE 53    Duty of Attorneys

The Administrator may request the respondent, or any other attorney who may have knowledge of pertinent facts, to provide information, in writing, concerning the matter under investigation. Such requests by the Administrator may be made by letter. It shall be the duty of every attorney admitted to practice in this state to respond within 14 days to any such request from the Administrator.

### RULE 54    Closure by Administrator

The Administrator shall close an investigation upon the Administrator and respondent's entry into a diversion agreement pursuant to Commission Rule 56 or upon the Administrator's conclusion that there is insufficient evidence to establish that the respondent has engaged in misconduct or to establish an allegation of unauthorized practice of law. The Administrator shall notify the complaining witness of the decision to close an investigation. Closure by the

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600 (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523 (800) 252-8048
Fax (217) 546-3785

Lance Scott
780 Sugarcreek Dr.
Joliet, IL 60433

Chicago
November 21, 2018

Re:    Luke Andrew Casson
       in relation to
       Lance Scott
       No. 2018IN04450

Dear Mr. Scott:

We have received your communication regarding Luke Casson.

We will request that the attorney submit a response to the matters you have raised. A copy of the attorney's response may be sent to you for your comments. We will then determine whether further action is warranted.

We will contact you if we require additional information from you and will advise you of any decision we reach in the matter. Please notify us of any change in your address or telephone number.

Thank you for your cooperation.

Very truly yours,

Gina M. Abbatemarco
Senior Counsel
ARDC Litigation Division

GMA:lj
MAINLIB_#1095545_v1



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Lance Scott
780 Sugarcreek Dr.
Joliet, IL  60433

Chicago
February 20, 2019

Re:     Luke Andrew Casson
        in relation to
        Lance Scott
        No. 2018IN04450

Dear Mr. Scott:

Enclosed is a copy of correspondence submitted to the Commission by Luke Casson's counsel, Elizabeth Granoff.

If you believe the response is inaccurate or if you wish to provide additional information or documents, please write to me within fourteen days.

We will evaluate the matter and advise you of our decision.  Again, thank you for your cooperation.

Very truly yours,

Gina M. Abbatemarco
Senior Counsel
ARDC Litigation Division

GMA:lj
Enclosure
MAINLIB_#1123157_v1

LAW OFFICES OF

# Elizabeth A. Granoff

661 W. Lake Street Suite 2 N · Chicago, Illinois 60661 · Phone: 312-441-1250 · Fax: 312-276-8632

elizabethagranoff@gmail.com

February 12, 2019

Ms. Gina Abbatemarco
Senior Counsel
Attorney Registration and Disciplinary Commission
One Prudential Plaza
130 East Randolph Dr., Suite 1500
Chicago, Illinois 60601

**RECEIVED**

FEB 13 2019

**ATTY. REG. & DISC. COMM.
CHICAGO**

RE:        2018IN4450: In Relation to Lance Scott

Dear Ms. Abbatemarco:

We are in receipt of your letter dated November 21, 2018 in relation to the renewed Request for Investigation of Mr. Scott dated November 14, 2018. Thank you for granting us several extensions. We sincerely apologize in the delay in submitting this to you.

We note that Mr. Scott, after roughly 11 years, brought an action for payment in the U.S. District Court in the matter entitled Lance Scott v. Ehlers Construction et.al. 04 C 6532 alleging that he was owed money in relation to a settlement agreement entered in 2006. Honorable Judge Matthew Kennelly presided over the case. We will fully discuss this matter in this Submission.

Additionally, in 2007, Mr. Scott filed a similar complaint against Mr. Casson at the ARDC. The ARDC closed this investigation. Attached as Group Exhibit 1 are copies of the Commission's 2007 Request for an Investigation, Mr. Casson's response, and Ms. Guzman's closure letter.

## I. Case History and Proceedings in original proceedings

On October 8, 2004 Mr. Casson filed a Complaint in the U.S. District Court for the Northern District of Illinois, Eastern Division on behalf of Mr. Scott. The lawsuit named the defendants James Worthington, individually, and Ehlers Construction Co., Inc. Judge Matthew Kennelly also presided over the original matter. It took several months for service to be perfected of both defendants because they were residents of the State of Wisconsin. Mr. Casson served Mr. Worthington by process on January 10, 2005. Mr. Worthington appeared in court through counsel, Donald Rothschild. On May 19, 2005,

1

LAW OFFICES OF

# Elizabeth A. Granoff

Mr. Casson filed a motion for a default judgment against Ehlers Construction Co., Inc. The Court set a hearing on damages for August 31, 2005. Subsequently, Mr. Casson discovered that Ehlers Construction was no longer in operation following the death of their principal owner, Mr. Ehlers.

On December 13, 2005, Mr. Rothschild, counsel for Mr. Worthington, moved to withdraw his appearance on behalf of Mr. Worthington. The Court held a status conference on December 21, 2005 to assess the procedural posture of the case and to encourage the parties to discuss settlement. Concurrently, the Court set the hearing on damages against Ehlers Construction for April 5, 2006. On April 5, 2006 the Court entered a default judgment against Ehlers Construction Co., Inc. in the amount of $283,505.44. To date, this judgment remains unpaid and uncollected.

The lawsuit continued against Mr. Worthington personally. On behalf of Mr. Scott, Mr. Casson negotiated a settlement with Mr. Worthington. Under the supervision of Judge Kennelly, Mr. Worthington provided his personal financial information to Mr. Casson's office. The information evidenced that Mr. Worthington was a man of modest means. He was a construction supervisor who earned approximately $70,000 per year, had a standing order to pay child support, and owned a home with little to no equity. All of his assets reasonably appeared to come from his employment. Based on these factors, Mr. Casson discussed at length with Mr. Scott the prospect of obtaining a settlement and the amount likely available. Mr. Casson advised Mr. Scott that Mr. Worthington did not have a net worth in excess of $100,000 and that a settlement in this amount was not likely. Mr. Casson suggested that that they should begin the negotiation in the range of $50,000-70,000. Mr. Scott agreed with this strategy.

Ultimately, Mr. Worthington committed to pay $40,000.00 in settlement of all claims against him. Attached as Exhibit 2 is a Copy of the Settlement Agreement. The terms of the settlement agreement were fairly simple. Specifically, Mr. Worthington agreed to pay Mr. Scott $40,000.00 inclusive of costs and attorney fees in three installment payments: $10,000 on August 15, 2006; $5,000 on January 15, 2007; and $25,000 on August 15, 2007. Mr. Casson discussed the settlement structure with Mr. Scott. Mr. Scott was concerned that he might not receive the full amount given the installment payments. Due to his concerns, Mr. Casson negotiated a clause in the Settlement Agreement which provided that Mr. Worthington agreed to the entry of a conditional judgment order in the amount of $100,000 plus attorney fees of $18,705.00 and costs of $1,234.44 in the event Mr. Worthington failed to pay the agreed upon installment payments. See Group Exhibit 2. Mr. Scott and Mr. Mr. Worthington signed the Settlement Agreement on May 23, 2006. On May 31, 2006, Mr. Casson tendered to the Court an Agreed Judgment Order by way of consent of the parties. On August 1,

2

LAW OFFICES OF

# Elizabeth A. Granoff

661 W. Lake Street Suite 2 N · Chicago, Illinois 60661 · Phone: 312-441-1250 · Fax: 312-276-8632

elizabethagranoff@gmail.com

2006 the Court entered an amended Agreed Judgment Order reflecting the terms of the agreement signed by the parties.

## II. Payment of Settlement Funds and Mr. Scott's subsequent complaint

The Attorney Fee Agreement provided for payment of a 40% contingent fee on any amounts received by verdict, settlement of the claims or award of the Court. See attached Attorney Fee Agreement, Group Exhibit 1. As explained, the terms of the Settlement Agreement provided that Mr. Worthington would make three installment payments totaling $40,000. Based on the amount of the settlement, the attorney fee was $16,000.00 plus costs expended. Specifically, the agreement provided for the following payments

|  | Date | Amount | Fee |
|---|---|---|---|
| First Installment: | August 15, 2006 | $10,000 | $4,000 |
| Second Installment: | January 15, 2007 | $5,000 | $2,000 |
| Third Installment: | August 15, 2007 | $25,000 | $10,000 |

See Group Exhibit 1.

As of today, Mr. Scott paid attorney fees in the amount of $10,000.00 plus expenses of $1,248.44. See Disbursement Summary attached as Exhibit 2. In sequence, Mr. Worthington paid the First Installment of $10,000.00 to the law firm of Andreou & Casson on September 8, 2006. Mr. Casson deducted a 40% attorney fee ($4,000.00) from this amount and paid the balance of $6,000.00 to Mr. Scott in the two installments of $4,000.00 and $2,000.00. A copy of Check No. 1137 in the amount of $4,000 is attached as Exhibit 3. A copy of Check No. 1148 in the amount of $2,000 is attached as Exhibit 4. Mr. Scott requested that two checks be issued, one to be mailed to his home and the other was picked up from Mr. Casson's office in person after Mr. Scott decided not to retain Mr. Casson to proceed with collection efforts. See Group Exhibit 1.

On February 8, 2007, Mr. Worthington paid the Second Installment of the Settlement Agreement in the amount of $5,000.00 to Mr. Casson. Mr. Worthington provided the law firm of Andreou & Casson with a $5000 money order. Money Order Number 400659180 is attached as Exhibit 5. According to the terms of their fee agreement, Mr. Casson deducted 40% ($2000.00) from this payment as his attorney fee and he also deducted owed costs in the amount of 1,248.44. This left a balance owed to Mr. Scott in the amount of $1,751.56. On February 7, 2007, Mr. Casson issued Check

LAW OFFICES OF

# Elizabeth A. Granoff

No. 1167 in the amount of $1,751.56 to Mr. Scott. Attached as Exhibit 6 is a copy of the cover letter for the issued check.

The third and final installment for the agreement was due on August 15, 2007. In July of 2007, Mr. Worthington's counsel wrote to Mr. Casson and requested a forbearance of payment of the remaining $25,000.00 until November 30, 2007. Attached as Exhibit 7 is a copy of correspondence dated July 17, 2007 from Kimberly Hurtado to Mr. Casson. Ultimately, the parties agreed that the final installment would be paid two installment payments of $10,000.00 and $15,000.00 respectively. Following his receipt of the correspondence, Mr. Casson wrote Mr. Scott and advised him of Mr. Worthington's request. Attached as Exhibit 8 is the letter dated July 23, 2007. Mr. Scott ultimately agreed to accept the payment arrangement. On December 3, 2007, Mr. Worthington tendered to Mr. Casson's office a check in the amount of $10,000.00. Once again, Mr. Casson deducted 40% from this amount for his attorney fee, and he issued Check No. 1234 for the balance of $6000 to Mr. Scott on December 17, 2007. Attached as Exhibit 9 is a copy of the Check No. 1234. On December 17, 2007, Mr. Casson issued an updated Rule 1.5 Settlement Statement to Mr. Scott which reflected the distribution of the Third Installment and showed that $15,000.00 remained owed. Attached as Exhibit 10 is a copy of the Settlement Statement dated December 17, 2007.

The remaining and final Installment of $15,000 was due on January 15, 2008. On December 19, 2007, Mr. Worthington called Mr. Casson and advised him that he had spoken to Mr. Scott that he wanted to alter the final payment arrangement. In short, Mr. Scott wanted the fourth and final payment of $15,000.00 to be paid directly to him and not to Andreou & Casson, Ltd. Mr. Casson unsuccessfully tried to contact Mr. Scott to discuss his request to Mr. Worthington. He spoke with Mr. Scott's wife on December 19, 2007 and left a message with her asking her to tell Mr. Scott to contact him. Mr. Casson next contacted his co-counsel, Glenn Kahn, to discuss whether he had any information about Mr. Scott's new desire to receive the payment directly to him. On December 27, 2007, Mr. Casson sent a letter to Mr. Kahn detailing Mr. Scott's agreement to simply receive the entire fourth and final installment and the application of the $6,000.00 to the balance of attorney fees owed. Attached as Exhibit 11 is a copy of this Correspondence. In addition, on December 27, 2007, Mr. Casson sent an amended Rule 1.5 Statement detailing the new distribution agreement. Attached as Exhibit 12 is the December 27, 2007 Rule 1.5 Statement. On January 2, 2008, Mr. Scott's wife contacted Mr. Casson inquiring about the stop payment order on the Third Installment. In correspondence dated January 3, 2008, Mr. Casson advised Mrs. Scott that Mr. Scott sought to change their agreement concerning distribution of the settlement amount. Attached as Exhibit 13 is a copy of this correspondence. Mr. Casson explained that the change in the distribution was made at the request of her husband, Mr. Scott, and explained that no further attorney fee was owed on the remaining balance of the settlement funds.

LAW OFFICES OF

# Elizabeth A. Granoff

661 W. Lake Street Suite 2 N · Chicago, Illinois 60661 · Phone: 312-441-1250 · Fax: 312-276-8632

elizabethagranoff@gmail.com

Mr. Casson believed that Mr. Worthington had made full payment on the agreed upon settlement to Mr. Scott. He had no knowledge from January 2, 2008 until February of 2018 that this had not occurred.

III. 2018 Proceedings before the U.S. District Court

On February 20, 2018 Mr. Scott filed a Motion to Enforce Settlement Award Entered on 8/1/2006 before Judge Kennelly in the U.S. District Court. In these proceedings, Mr. Scott alleged, for the first time, that he did not receive the Fourth Installment payment from Mr. Worthington. Attached as Exhibit 14 is a copy of Mr. Scott's Motion to Enforce Settlement. Mr. Scott did not appear with counsel.

On March 8, 2018, Mr. Casson filed his response to Mr. Scott's Motion to Enforce Settlement. In that response, Mr. Casson attached all of the payment information available to him as well as the providing to the Court the payment schedules, as altered by Mr. Scott. See attached as Exhibit 14-A Mr. Casson's response. Judge Kennelly ordered both Mr. Worthington and Mr. Scott to produce their respective bank records. On August 1, 2018, Mr. Worthington produced relevant bank records. Attached as Exhibit 15 are copies of the documents tendered by Mr. Worthington. By Affidavit, Mr. Worthington asserted that he made the final and Fourth Installment in the amount of $15,000 directly to Mr. Scott as requested. Attached as Exhibit 16 is a copy of the Worthington Affidavit. On August 9, 2018 Lance-Dolph: Scott, as Beneficiary and Authorized Representative for the Estate of Lance D. Scott, produced bank records from Mr. Scott's accounts at both Chase Bank and the Bank of America. The Bank of America records were from November 23, 2017 to February 21, 2018. The Chase Bank records were from November 21, 2017 to February 21, 2018. Attached as Group Exhibit 17 are copies of Mr. Scott's records. We note that on June 20, 2008, Mr. Worthington deposited $33,619.95 into his account. Attached as Exhibit 18 is a copy of this deposit. On July 2, 2008, Mr. Worthington transferred $15,000.00 to his account at the Bank of Deerfield. Attached is the $15,000 transfer as Exhibit 19. Mr. Worthington did not produce any records from the Bank of Deerfield.

On September 19, 2018, the U.S. District Court issued an order stating that Mr. Casson engaged in a form of "self-help" which resulted in the collection of $6,000.00 in excess attorney fees referring to the stop payment found in the distribution of the Third Installment payment. Attached as Exhibit 20 is a copy of the September 19, 2018 Order. The Order specifically stated:

LAW OFFICES OF

# Elizabeth A. Granoff

"The Court appreciates that, at the time, Casson likely felt that he had was being end-run by his client and then acted in haste. For this reason, the Court will defer for 21 days reporting Casson to the appropriate disciplinary authorities (either the Executive Committee of this Court, or the Illinois Attorney Registration and Disciplinary Commission or both). If Casson repays Scott the $6,000.00 within that period, the Court will forego any such reporting. Casson is directed to file a status report with the Court on October 12, 2018."

Mr. Casson filed two documents with the U.S. District Court on March 8, 2018. In his response, he detailed all of the payments made to Mr. Scott, and explained his actions. On September 24, 2018, he filed a Status Report indicating that he transmitted a check in the amount of $6,000.00 to Mr. Scott. Ultimately, the U.S. District Court took no action based on the timely response and compliance with the direction of the Court. Since, upon Mr. Scott's acceptance of the additional payment, he was made whole and received full value for his portion of the settlement funds, the U.S. District Court took no further action.

Mr. Casson was not attempting to receive any additional or excessive fee in this matter. At the time the issued check was voided, Mr. Casson believed, and had received confirmation and assurances from both Mr. Worthington and Mrs. Scott that Mr. Scott wanted to alter the distribution. Mr. Worthington did not object to making the final payment directly to Mr. Scott and Mr. Casson did not either. Mr. Casson would have received only that fee which was contracted for if the final payment had been made in January, 2008. Mr. Casson received no indication that the final payment had not been made as scheduled as neither Mr. Scott nor Mrs. Scott advised or complained to him that they had failed to receive the final payment.

Because Mr. Scott did not complain or object to the stop-payment, and Mr. Casson provided a written explanation to Mrs. Scott regarding the stop payment and her husband's alteration of the payment schedule, Mr. Casson concluded that the payment arrangements were altered because of Mr. Scott's personal choice of payment. It certainly did appear to Mr. Casson at the time that Mr. Scott altered the payment schedule without consulting Mr. Casson in order to avoid payment of a portion of the attorney fee. However, since the fees owed would have been paid in full in any event, it was of no consequence since it appeared that Mr. Scott would receive the entire value of the settlement with Mr. Worthington upon the payment of the Fourth Installment.

Also, Mr. Casson now has the benefit of 10 years of hindsight to view, as best as he can piece together, the decisions which led to Mr. Scott filing his recent Motion to Enforce. Mr. Casson acknowledges that it would have been a better business practice

6

LAW OFFICES OF

# Elizabeth A. Granoff

661 W. Lake Street Suite 2 N · Chicago, Illinois 60661 · Phone: 312-441-1250 · Fax: 312-276-8632

elizabethagranoff@gmail.com

should a similar situation ever arise, to simply hold the distribution of the third installment until the final installment had been paid. In the alternative, Mr. Casson could have allowed the third distribution of $6,000.00 to Mr. Scott to stand and advised Mr. Worthington of that fact.

However, Mr. Casson was not aware that Mr. Scott did not receive the final installment. A full 10 years passed without any complaint or discussion of the issue by Mr. Scott. Mr. Casson was unaware and had no way to know that the final installment had not been paid. It was reasonable for Mr. Casson to conclude, however, that Mr. Scott, having been silent for 10 years, received the payment. If Mr. Casson knew that Mr. Scott had never received the final payment, he would have been willing to investigate the matter and take appropriate legal action.. In any event, once Mr. Scott filed his motion, Mr. Worthington swore, on oath, that he had made the final payment. He then produced bank records which tended to show that he had transferred the final payment of $15,000. We also note that he did not list this debt in his subsequent bankruptcy case. The Court recently determined, however, that there was insufficient evidence to show the actual payment had ever occurred.

As noted, on September 20, 2018 Mr. Casson issued check number 11641 in the amount of $6,000.00 to Mr. Scott. Attached as Exhibit 21 is a copy of the Check. Mr. Casson sent the check to Mr. Scott via Federal Express who subsequently cashed it. On September 24, 2018, after receiving confirmation of the delivery of the check, Mr. Casson filed a status report with the Court evidencing his payment to Mr. Scott. Attached as Exhibit 22 is the Status Report.

As noted, Judge Kennelly determined not to file a disciplinary report against Mr. Casson after he paid this amount, but Mr. Scott chose to take this action. Attached as Exhibit 23 is a copy of correspondence dated October 15, 2018 from Mr. Scott to Mr. Casson.

Mr. Scott contends that Mr. Casson violated an ethical duty owed to him. Mr. Casson believed that Mr. Scott received the final payment owed to him. He had no reason to know that this did not occur. Mr. Scott never contacted him otherwise in the 10 years between the amount owed and his motion to enforce the settlement.

Mr. Casson confirmed with Mr. Scott both verbally and in writing that that the distribution on the Third Installment would be voided, that he could receive the full amount for his agreed upon attorney fee because Mr. Scott would receive the full

7

LAW OFFICES OF

# Elizabeth A. Granoff

remaining owed amount of the final installment of $15,000. Mr. Casson never sought fees on that installment payment as they had agreed the he would receive the full $10,000 from the third installment.

We note that the Court determined that Mr. Worthington did not have the banking records available to determine whether he had ever made the Fourth Installment to Mr. Scott. Because no documentation existed, Mr. Casson issued the $6000 reimbursement to Mr. Scott.

### Conclusion

For these reasons, there is no evidence of any professional misconduct on Mr. Casson's part. Accordingly, we respectfully request this matter to be closed. If you require any further information or documentation, please do not hesitate to contact me. Thank you for your consideration.

Sincerely,

Elizabeth A. Granoff

8

Exhibit J



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS
www.iardc.org

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600 (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523 (800) 252-8048
Fax (217) 546-3785

Lance Scott
780 Sugarcreek Dr.
Joliet, IL 60433

Chicago
April 2, 2019

Re:     Luke Andrew Casson
        in relation to
        Lance Scott
        No. 2018IN04450

Dear Mr. Scott:

In our March 25, 2019 letter to you we had requested that you produce the following information which was relevant to our investigation:

1)     Judge Kennelly's September 19, 2018 opinion shows that you produced a set of bank records to the court in case number 1:04-cv-06532. Please forward a copy to me of what you produced to the court;

2)     Provide any transcripts from the court hearings regarding Mr. Casson's alleged misconduct.

In your March 29, 2019 letter to the Commission, you indicated that you did not intend to produce the documents requested because you do not believe they are necessary to our investigation, and that Ms. Granoff had already produced the bank records to us. You also maintained that this Commission should discipline Mr. Casson based solely on Judge Kennelly's opinion and that we should not engage in any review of his opinion.

Please be advised that the duties of this Commission relate solely to investigating and prosecuting allegations of professional misconduct against lawyers. While Judge Kennelly's opinion informs that investigation, it is not dispositive of our inquiry. The Commission conducts an independent investigation, gathers the evidence and evaluates it to determine if we can meet our burden of proof and assess whether it is appropriate to proceed with the filing of a disciplinary complaint. During the course of this investigation, you were asked to produce the bank records that you had provided to the court. We asked for a copy of those records as we wanted to see the complete set that the judge reviewed and those records did not appear to be available from our review of the electronic court docket. Although Ms. Granoff produced bank

MAINLIB_#1137202_v1

Lance Scott
April 2, 2019
Page 2

records which were included with her response to your allegations, we went back to the source of the information (i.e., you) to make sure we had all of the records that you had presented to the court.

Further, we requested that you produce transcripts from the court hearings because in your March 8, 2019 letter to the Commission, you alleged that Mr. Casson did not appear in court and that he made certain statements to the court. It was unclear from the court docket as to whether the transcripts were to available anyone other than parties to the underlying case.

If you have any questions regarding this correspondence, please contact me at the Commission's Chicago offices.

Very truly yours,


Gina M. Abbatemarco
Senior Counsel
ARDC Litigation Division


GMA:cce

Exhibit
K

April 9, A.D., 2019

In care of 780 Sugarcreek Drive
Township of Joliet/Will County
Republic of Illinois [60433]
(815) 768-7828/(815) 557-0698
Real Land North America

**ATTORNEY REGISTRATION
AND DICIPLINARY COMMISSION
of the SUPREME COURT OF ILLINOIS
ARDC Litigation Division**
**Attn:** Gina M. Abbatemarco, Senior Counsel
One Prudential Plaza
130 East Randolph Drive, Suite 1500
Municipality of Chicago, IL. 60601-6219

Re: Luke Andrew Casson
in relation to
Lance Scott

Greetings Gina M. Abbatemarco, Shalom:

This letter is to serve as my acknowledgment of being in receipt of your correspondence dated April 2, 2019, in the above reference matter.

Contrary to your misrepresentation at pg. 1, para 1 of your correspondence dated April 2, 2019. I indicated that it was unreasonable for you to request of me to afford you with duplicate documentation of the information previously supplied to you, which was cited as "Exhibit 17", set forth in ARDC former Senior Counsel, Elizabeth A. Granoff's seemingly improper, unethical and probably unlawful drafted response to my request for investigation of attorney Luke Andrew Casson. The documents which you have sought duplicate copies of was attached to my August 9, 2018 filed Second LR 78.5 Motion Request For Decision On

Plaintiff's Motion To Enforce Settlement Award On Augus1, 2006. Since you are hell bent upon receiving duplicate documentation I have attached that documentation to this correspondence, labeled "Exhibit A". The same documentation could have been more easily procured by going into the Case Look-up on the U.S. District Court N.D.Ill. website.

Contrary to your misrepresentation at p. 1, para.1, sentence 2 of your correspondence dated April 2, 2019. I clearly stressed that in light of U.S. District Judge, Matthews F. Kennelly's issued determination of September 19, 2019, that this matter should be tendered over to the Administrator to enable disciplinary proceedings to be commenced against Luke Andrew Casson (See March 29, 2019 correspondence, p. 3, para. 2, sentence 1. Surely, disciplinary action usually follows the conclusion of disciplinary proceedings, correct?

Contrary to your misrepresentation at pg. 1, para. 2, sentence 3 of your April 2, 2019 dated correspondence. After U.S. District Judge, Matthew F. Kennelly, conducted a seven (7) month long investigation, which included the reviewing all relevant and pertinent documentary evidence, and after attorney Luke Andrew Casson's failure to appear at the last and final scheduled court proceeding. U.S. District Judge, Matthew F. Kennelly, did not express a "Opinion" but rather, he issued his written "Order" setting forth his findings of fact and conclusion of law and his arrived at determination that attorney Luke Andrew Casson owed me a Fiduciary duty and that attorney Luke Andrew Casson had

2.

violated his Fiduciary duty owed to me (*See* attached "Exhibit B" September 19, 2018 issued Order On Lance Scott's Motion To Enforce, pgs. 1 – 7, particularly p. 3, paras. 3 & 4, p. 4, para. 1 & 2, p. 5, p. 6, paras. 1 & 2).

Furthermore, the transcripts of the various court proceedings during which time attorney Luke Andrew Casson verbally claimed that he had no knowledge of my claim presented to the District Court, and the transcripts of proceedings when U.S. District Court Judge, Matthew F. Kennelly made his statement about his having some questions to ask attorney Luke Andrew Casson, can be easily accessed by the Administrator upon his invoking the Subpoena Power authorized under Rule 754.

Further, if I did not cite on my submitted Request For Investigation form the name of U.S. District Judge, Matthew F. Kennelly, as a key witness having knowledge and information about the issue complained of to this Commission. Then, I am doing so now citing him as a witness having knowledge and information about all of the various district court proceedings, and I recommend that you initiate telephone contact with him, U.S. District Judge, Matthew F. Kennelly, @ (312) 435-5618, because he can personally and fully disclose to you everything which occurred during the several court proceedings presided over by him, particularly the very last proceeding when attorney Luke Andrew Casson was missing in action somewhere, for reasons known only to him.

3.

The burden of responsibility rest upon the shoulders of attorney Luke Andrew Casson to present admissible documentary evidence to disprove what I have presented to this Commission for review and consideration during this investigation phase of my complaint against attorney Luke Andrew Casson, which he, attorney Luke Andrew Casson, has failed to do through his own self.

With the exception of information which you can derived directly from U.S. District Judge, Matthew F. Kennelly, by way of interview. You have been afforded with all available admissible relevant and pertinent documentary evidence to support the appropriateness of proceeding with the filing of a disciplinary complaint, and the tendering of this matter over to the Administrator to commence formal disciplinary proceedings, during which time former ARDC Senior Counsel/Attorney Disciplinary Defense attorney, Elizabeth A. Granoff, can then serve as an advocate for attorney Luke Andrew Casson, though such representation would seem to constitute a clear violation of RPC Rule 3.1 Meritorious Claims and Contentions (*See* "Exhibit C" attached hereto), especially in light of the reality of the findings of fact and determination arrived at by U.S. District Judge, Matthew F. Kennelly (*See* "Exhibit B" September 19, 2018 issued Order, pgs. 4 – 6).

Again, in addition to there already being an arrived at determination by U.S. District Judge, Matthew F. Kennelly, that attorney Luke Andrew Casson owed me a fiduciary duty and that he, Luke Andrew Casson, did

4.

not act appropriately in jumping to a conclusion and then acting in his own financial interest to my detriment (*See* "Exhibit B" September 19, 2018 issued Order, p. 6, para. 2, sentences 6 & 7). Attorney Luke Andrew Casson equally breached the terms and conditions of our entered into contractual agreement resulting in me being deprived of the full settlement monies which I was entitled to receive per the terms and conditions of the entered into settlement agreement.

If for some reason you believe that either you are incapable of, or you are unwilling to afford me with the full and equal benefit of the ARDC's available remedial action as accorded to other ARDC complainants having had submitted a legitimate legal grievance against their contracted attorney at law. Then, I recommend that you either refer this matter over to the Ethics Committee of the Illinois Bar Association, or refer this matter over to the Executive Committee for the U.S. District Court N.D. Ill.

In conclusion, based upon U.S. District Judge, Matthew F. Kennelly's arrived at determination (*See* "Exhibit B" September 19, 2018 issued Order, p. 6, para. 2). Not only should former ARDC Senior Counsel/ Attorney Disciplinary Defense attorney, Elizabeth A. Granoff's correspondance be stricken from consideration. Her, Elizabeth A. Granoff's correspondence should have never been submitted in the first place based upon your correspondence of November 21, 2018 clearly indicated, "We will request that the attorney (In this case, Luke Andrew Casson)

5.

submit a response to the matters you have raised. A copy of the attorney's response may be sent to you for your comments" (*See* "Exhibit D" attached hereto). Elizabeth A. Granoff was not cited as the attorney in regards to my November 13, 2018 submitted communication to this Commission. Former ARDC Senior Counsel and now private practicing Attorney Disciplinary Defense attorney, Elizabeth A. Granoff's submitted correspondence, by appearance, seems to be a violation of RPC Rules 3.1, 4.1(a), and Rules 8.4(a)(c )(d), in that, in addition to Elizabeth A. Granoff's submitted correspondence to this Commission being riddled With misrepresentations. Her submitted correspondence failed to disclose to this Commission the findings of pertinent material facts and determination arrived at by U.S. District Judge, Matthew F. Kennelly, and it seems that the correspondence was submitted in "bad faith" as so to seemingly attempt to engage in conduct that is prejudicial to the proper administration of justice.

Therefore, you should completely disregard former ARDC Senior Counsel, Elizabeth A. Granoff's submitted response to this Commission, and you should file the warranted disciplinary complaint to enable the Administrator to commence the warranted formal disciplinary proceedings, without any further unnecessary delay, in fulfillment of the legal obligation which the ARDC owes to me, as authorized under Supreme Court Rule 751.

Respectfully submitted in Peace and Friendship

Lance Dolph of the Scott Family
Complainant

Exhibit L

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

One Prudential Plaza, 130 East Randolph Drive, Suite 1500, Chicago 60601-6219
Phone: 312/565-2600 or 800/826-8625     Fax: 312/565-2320

## CLIENT PROTECTION PROGRAM CLAIM FORM

| Instructions: | Answer every question in this application. If space is inadequate, attach additional pages. It is important that you submit all evidence that proves your loss, such as cancelled checks, receipts, letters, closing statements, etc. |
|---|---|

*Mail the completed application and other evidence to the attention of the Client Protection Program at the address above.*

PLEASE PRINT OR TYPE.

1. :Lance-Dolph: Scott
   *Your name*

   In care of 780 Sugarcreek Drive
   *Street address*                                          *Apt. #*

   Joliet                          Illinois              [60433]
   *City*                          *State*               *Zip*

   (815) 768-7828                  (   )
   *Home phone number*            *Business phone number*

2. Luke Andrew Casson
   *Name of attorney who has dishonestly taken your money*

   661 W. Lake Street, Ste. 2N         Chicago
   *Street address*                    *City*

   Illinois                            60661        (312) 767-4320
   *State*                             *Zip*        *Phone number*

3. _____         It has not ended.
   *Date you hired the attorney*      *Date attorney/client relationship ended*

4. What legal services did you ask this attorney to perform for you?
   All pertinent information is available in ARDC Complaint
   titled: Luke Andrew Casson In relation To Lance Scott No. 2018IN4450

5. How much money did you pay this attorney? $1,000.00      State the amount of your loss: $283,000.00
   Retainer

6. Was your agreement with this attorney in writing?  ☒ Yes   ☐ No      If yes, attach a copy of the agreement.

7. Did any part of the loss consist of money given to the attorney in payment of fees?   ☐ Yes  ☒ No

   If yes, state the amount: _____

   Describe how and when your money or property came into the attorney's possession:
   See all documentation submitted by me to Gina M. Abbatemarco,
   Senior Counsel, particularly the April 9, A.D. 2019 correspondence

9. State the date when the loss of your money or property occurred:

See all documentation submitted by me to Senior Counsel, Gina M. Abbatemarco in reference to Claim No. 2018 IN 04450

10. State the date when you discovered your loss, and how you discovered the loss:

See all documentation submitted by me to Senior Counsel, Gina M. Abbatemarco in reference to my Complaint No. 2018 IN 04450

11. Describe the attorney's dishonest conduct and how it caused your loss:

See Exhibit B attached my documentation submitted to Senior Counsel Gina M. Abbatemarco on April 9, A.D. 2019

12. Provide the names and addresses of any other persons who have knowledge of the loss:

U.S. District Judge Matthew F. Kennelly, 219 South Dearborn Street, Municipality of Chicago, Illinois 60604 (312) 435-5618

13. This loss has been reported to: ☐ State's Attorney   ☐ Police   ☒ ARDC

Furnish a copy of your complaint and describe what action was taken:

Document in possession of ARDC. In correspondence dated June 20, 2019, Senior Counsel Gina M. Abbatemarco indicated that the matter is still pending.

14. If you have not previously reported this loss, explain why:

_____

_____

15. Can your loss be reimbursed from any other source, such as insurance, fidelity bonds or surety agreements?

☐ Yes   ☐ No   ☒ Don't know   If yes, describe the source: _____

16. Describe what steps you have taken to recover the loss directly from the attorney, or any other source:

Prior to commencing Complaint No. 2018 IN 04450, I wrote Attorney Luke Andrew Casson a letter requesting to meet with him and he failed to respond.

17. If the loss caused you special hardship, explain how:                    $283,000.00

I have been denied of my full settlement monies as agreed upon in the settlement agreement. I am seeking recovery under Covered Losses 1-3 from the Program, for reason(s) fully disclosed in my April 9, A.D., 2019 Correspondence to Senior Counsel. U.S. District Judge Matthew F. Kennelly made the determination that Luke Andrew Casson violated his fiduciary duty owed to me.

18. State whether you have ever had a family or business relationship with the attorney and identify the relationship (e.g. spouse, child, parent, grandparent, sibling, partner, associate or employee):

NO RELATIONSHIP

19. State other facts that you believe are important to the Program's consideration of your claim:

All of the relevant facts are fully disclosed in U.S. District Court N.D. Ill.'s District Judge Matthew F. Kennelly's September 19, 2018 issued Order @ pgs. 4-6, which is attached as Exhibit B to the April 9, A.D. 2019 correspondence which I sent to ARDC Senior Counsel, Gina M. Abbatemarco in reference to No. 2018IN04450.

20. NONE
Name of present attorney

Street address                                    City

State                                             Zip          (    ) Phone number

---

*Commission rules do not permit attorneys who help clients process claims with the Program to charge legal fees for that service. When the Commission makes a decision on your claim, the facts relating to your loss become a public record.*

July 16, A.D. 2019
Date

Signature of Claimant(s)

Exhibit
M

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Lance Scott
780 Sugarcreek Dr.
Joliet, IL 60433

Chicago
July 25, 2019

Re:    Luke Andrew Casson
       in relation to
       Lance Scott
       No. 2019CP00078

Dear Mr. Scott:

We have received your claim for reimbursement from the Client Protection Program.

The rules governing the Program provide that reimbursement may be made only when the involved lawyer has been disciplined by the Supreme Court of Illinois. The lawyer involved in your case, Luke Andrew Casson, has never been disciplined by the Court.

We note, however, that you have also filed a disciplinary grievance against Mr. Casson. The investigation of that grievance is pending with ARDC staff lawyer Gina Abbatemarco. Your reimbursement claim, therefore, will be put on hold until there is a disposition in the disciplinary matter. Your reimbursement claim will then be reactivated and considered.

If you have questions about the pending disciplinary investigation, please contact Ms. Abbatemarco.

Please keep us advised of any changes of address or telephone number.

Thank you for your cooperation.

Sincerely,

Eileen W. Donahue
Senior Counsel

EWD:ms

Exhibit
N



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS
www.iardc.org

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600  (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 301
Springfield, IL 62704
(217) 546-3523  (800) 252-8048
Fax (217) 546-3785

Lance Scott
780 Sugarcreek Drive
Joliet, IL  60433

Chicago
August 5, 2019

Re:    Luke Andrew Casson
       in relation to
       Lance Scott
       No. 2018IN04450

Dear Mr. Scott:

We have concluded our inquiry in the above matters and have determined that there is not a sufficient basis for further action by this office.

As you will recall, you complained that Mr. Casson received settlement monies on your behalf in 2007 in resolution of the matter of *Lance Scott v. Ehlers Construction, et al.*, case number 04 C 6532. You claimed that although Mr. Casson took his fees from the first three installments, he stopped payment on the check representing your portion of the settlement for the third installment ($6,000) and withheld those funds from you as the final payment of his attorney's fees. You claimed you did not receive payment of the fourth installment and Mr. Casson did not pay you the $6,000 until 11 years later, after you filed a motion regarding the debtor's failure to pay you the fourth installment and brought the matters to the judge's attention. You also said that after a hearing, the judge required Mr. Casson to repay the $6,000 to you. Although you have been repaid, you said that you want Mr. Casson to pay you interest for the 11 years he held onto your money.

After reviewing the materials we received from you and Mr. Casson, documents from the court file, and the bank records presented at the hearing, we have determined that formal disciplinary proceedings are not warranted at this time. Illinois Supreme Court Rules require that this Commission establish all elements of a violation of the Rules of Professional Conduct by clear and convincing evidence. We have concluded that we would be unable to establish under this standard of proof that the attorney engaged in professional misconduct. In making this determination we considered that at the time he stopped payment on the $6,000 check, Mr. Casson notified you of his actions in writing and that you did not appear to dispute that he could keep the $6,000 as the final payment of the total amount of his contingency fee ($16,000).

MAINLIB_#1175943_v1

Lance Scott
August 5, 2019
Page 2

You and Mr. Casson had previously agreed that he could deduct his 40% fee from each installment paid by the debtor. Mr. Casson had received the third installment, totaling $10,000, in December 2007. At that time, he distributed $4,000 to himself in fees and wrote a check to you for the remaining $6,000. Before the check cleared his account, Mr. Casson claimed that you confirmed that you had arranged to receive the fourth and final installment of $15,000 directly from the debtor. Mr. Casson said he then stopped payment on the $6,000 check he had written to you from the third installment. He provided a copy of a letter dated December 27, 2007 which he said he sent you that revised the distributions from your settlement and showed that he would receive the $6,000 remaining from the third installment as final payment for his attorney's fees and that you would receive the entire remaining $15,000 directly from the debtor. Mr. Casson said that you did not dispute the information in his letter or that he could keep the $6,000, and you did not notify him that you had not received payment from the debtor until you brought the matter before the judge 11 years later.

Although we do not condone that Mr. Casson stopped payment on the check he had written to you in order to obtain the remaining amount you owed in fees and did not take more affirmative steps to obtain an specific acknowledgment from you that you were in agreement with his actions, we considered that Rule 1.15(b) and (c) of the Illinois Rules of Professional Conduct (1990) in effect at the time, required that Mr. Casson provide notice to you about the receipt and distribution of your funds. Further, Rule 1.15 required him to hold the funds in his client trust account if he had been notified that you were disputing that he could receive them as his fee. It appears that Mr. Casson did provide written notice to you about the distribution of the funds in his December 2007 letter to you, and that he thought he had your agreement to keep the funds as his fee when he did not hear anything further from you or disputing that he could be paid his fee, until 11 years later. We further noted that the judge in your case determined that Mr. Casson had acted in haste, and that Mr. Casson has repaid the $6,000 to you.

Based on the above facts, we have determined that a disciplinary action based on your complaint would not succeed, and we will take no further action in this matter. However, to address the above-noted concerns we have cautioned Mr. Casson to review the provisions of the Illinois Rules of Professional Conduct and to take all reasonable action to ensure that similar charges are not brought to the Administrator's attention in the future. We also notified Mr. Casson that should we receive additional reports of similar conduct by him in the future, this matter is subject to being reopened pursuant to Commission Rule 54.

Lance Scott
August 5, 2019
Page 3

If you have any questions about our decision to close this matter, please contact me at (312) 565-2600. Thank you for bringing this matter to our attention.

Very truly yours,

Gina M. Abbatemarco
Senior Counsel

GMA:cce

Exhibit O

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

One Prudential Plaza
130 East Randolph Drive, Suite 1500
Chicago, Illinois 60601-6219
(312) 565-2600 (800) 826-8625
Fax (312) 565-2320

3161 West White Oaks Drive, Suite 3(
Springfield, IL 62704
(217) 546-3523 (800) 252-8048
Fax (217) 546-3785

Lance Scott
780 Sugarcreek Dr.
Joliet, IL 60433

Chicago
August 16, 2019

Re:     Luke Andrew Casson
        in relation to
        Lance Scott
        No. 2019CP00078

Dear Mr. Scott:

The file on your Client Protection Program claim has been closed as ineligible.

Commission Rule 501(i) provides that a claim may be considered by the Commission if the involved lawyer has been disciplined by the Illinois Supreme Court or has died. The lawyer involved in your claim, Luke Andrew Casson, has never been the subject of formal disciplinary proceedings and is not dead. As you know, the disciplinary investigation of your grievance against Luke Andrew Casson was closed with a finding that there was not a sufficient basis for further action.

If you have any questions about the disciplinary investigation, please contact the staff lawyer who handled that matter.

Sincerely,

Eileen W. Donahue
Senior Counsel

EWD:ms

MAINLIB_#1180336_v1

Exhibit
P

Com 57

(c) **Agreement.** The terms of the diversion shall be set forth in a written agreement between the Administrator and respondent. The agreement shall specify the general purpose of the diversion, the investigations involved in the diversion, the requirements of the diversion, the length of time in which the requirements shall be completed, and any requirement for payment of restitution or costs.

(d) **Costs.** The respondent shall pay all the costs incurred in connection with participation in the diversion agreement.

(e) **Effect.** Upon entry into the diversion agreement, the underlying investigation(s) shall be closed by the Administrator. Diversion shall not constitute a form of discipline. .

(f) **Failure to Comply.** If the respondent fails to comply with the requirements of the diversion agreement, the Administrator may modify the requirements of the diversion agreement or terminate the diversion agreement and reopen the investigation(s).

(g) **Effect of Rejection of Recommendation.** If the respondent refuses to enter into a proposed diversion agreement, the investigation shall proceed as if no such proposal had been made.

(Adopted September 26, 2016, effective November 18, 2016; amended April 20, 2018, effective May 15, 2018.)

## RULES 57 through 100    Reserved

## Article III  The Inquiry Board

## RULE 101   Organization

The Inquiry Board shall act in panels composed of two lawyers and one nonlawyer. Two members of the panel shall constitute a quorum. The concurrence of two members shall be necessary to a decision by the panel. The decision of a panel shall be the decision of the Inquiry Board. In the absence of the chair of a panel at a meeting, the members present shall designate one of the members as acting chair. A panel may reconsider its decision to dismiss an investigation, to close an investigation, to vote a complaint prior to the filing of the complaint with the clerk of the Commission, or to institute unauthorized practice of law proceedings prior to the institution of those proceedings.

(Amended, effective July 25, 1986; amended, effective April 15, 1994; Amended, December 7, 2011, effectively immediately.)

## RULE 102   Function and Procedure of Inquiry Board

The Board shall determine whether there is sufficient evidence for the filing of a complaint or petition with the Hearing Board or unauthorized practice of law proceedings. The Board shall review the investigation made by the Administrator. The Board may direct any additional investigation it deems appropriate and require the attendance of witnesses before it or one of its members. Where the Board deems appropriate, it may allow or require the appearance of the respondent, but the Board shall not be required to allow the respondent's appearance. The Board shall not determine the merits of the charge or conduct adversary hearings. The Board is not required to hear the testimony of witnesses. The Board may determine to defer further proceedings where warranted by the circumstances as set forth in Rule 108.

(Amended, effective July 12, 1990; amended, effective May 1, 2001 Amended, December 7, 2011, effectively immediately.)

Com 102

4

## RULE 103   Inquiry Panel Agenda

The Administrator shall:

(a) prepare an agenda in advance for each meeting of a panel; and

(b) maintain minutes of the meeting, indicating the disposition of each investigation on the agenda, whether a complaint shall be voted, unauthorized practice of law proceedings shall be authorized, the investigation dismissed, the investigation closed, or the matter continued for further action.

(Amended, effective July 25, 1986 Amended, December 7, 2011, effectively immediately.)

## RULE 104   Prompt Disposition

Investigations before the Board shall be disposed of promptly.

(Amended, effective July 25, 1986.)

## RULE 105   Notice that Complaint May be Voted

(Amended, effective July 25, 1986; deleted effective May 1, 2001.)

## RULE 106   Right to Counsel

If respondent appears before a panel, or one of its members, he may be represented by counsel.

(Amended, effective July 25, 1986.)

## RULE 107   Notification to Complaining Witness

The Administrator shall notify the complaining witness of the decision of the Inquiry Board.

## RULE 108   Determination to Defer Further Proceedings

(a) **Deferral**. With the agreement of the Administrator and the attorney, the Inquiry Board may determine to defer further proceedings pending the attorney's compliance with conditions imposed by the Board for supervision of the attorney for a specified period of time not to exceed one year unless extended by the Inquiry Board prior to the conclusion of the specified period. Proceedings may not be deferred under the provisions of this Rule if:

(1) the conduct under investigation involves misappropriation of funds or property of a client or a third party;

(2) the conduct under investigation involves a criminal act that reflects adversely on the attorney's honesty;

(3) the conduct under investigation resulted in an actual loss to a client or other person, and the Court's rules or precedent would allow for a restitution order for that type of loss in a disciplinary case, reinstatement case or Client Protection Program award, unless restitution is made a condition of deferral.

(b) **Conditions**. Such conditions shall take into consideration the nature and circumstances of the conduct under investigation by the board and the history, character and condition of the attorney. The conditions may include, but are not limited to, the following:

(1) periodic reports to the Administrator;

(2) supervision of the attorney's practice or accounting procedures;

(3) satisfactory completion of a course of study;

(4) successful completion of the Multistate Professional Responsibility Examination;

(5) compliance with the provisions of the Rules of Professional Conduct;

(6) restitution;

(7) psychological counseling or treatment; and

(8) abstinence from alcohol or drugs.

(c) **Affidavit**.    Prior to the Inquiry Board entering its determination to defer further proceedings, the attorney shall execute an affidavit setting forth the following:

(1) the nature of the conduct under investigation by the Inquiry Board as admitted by the attorney;

(2) the conditions to be imposed by the Inquiry Board for supervision of the attorney;

(3) that the attorney does not object to the conditions to be imposed;

(4) that the attorney understands that should he fail to comply with the conditions imposed by the Inquiry Board a formal complaint may be voted and filed with the Hearing Board;

(5) that the admissions by the attorney with respect to his or her conduct may be introduced as evidence in any further proceedings before the Hearing or Review Board; and

(6) that the attorney joins in the Inquiry Board's determination freely and voluntarily, and understands the nature and consequences of the Board's action.

(d) **Supervision**.    The Administrator shall be responsible for the supervision of the conditions imposed by the Inquiry Board. Where appropriate, he may recommend to the Board modifications of the conditions and shall report to the Board the attorney's failure to comply with the conditions or to cooperate with the Administrator. Upon a showing of the attorney's failure to comply with conditions, the Board may request that any deferred matters be returned to its agenda for future consideration.

(e) **Compliance**. Upon the attorney's successful compliance with the conditions imposed by the Inquiry Board, the Board shall dismiss or close the investigations pending before it at the time it determined to defer further consideration.

(Adopted July 9, 1990; amended, effective October 23, 1992; amended April 20, 2018, effective May 15, 2018.)

### RULES 109 through 200    Reserved

### Article IV  The Hearing Board

### RULE 201    Organization

The Hearing Board shall act in panels composed of two lawyers and one nonlawyer. The Commission will designate one of the lawyer members as Chair of the panel. Two members of the panel shall constitute a quorum. The Administrator and the respondent may consent to a hearing before one member of the panel; however, the concurrence of two members of a panel shall be necessary to a decision. In the absence of the Chair at a hearing, the remaining lawyer member shall serve as acting chair. The decision of the panel shall be the decision of the Hearing Board.

(Amended, effective July 25, 1986; amended, effective April 15, 1994.)

### RULES 202 through 210    Reserved

### RULE 211   Preparation and Form of Complaint

A complaint voted by the Inquiry Board shall be prepared by the Administrator and captioned "In the Matter of Attorney-Respondent No. _____." The complainant shall be the Administrator. The complaint shall contain a concise statement of the facts constituting the alleged misconduct.

**Com 211**

6

### RULE 212   Docketing and Assignment to Panel for Hearing

The complaint shall be filed with the Clerk. The Clerk shall docket the complaint and shall assign the matter to a hearing panel in accordance with procedures and policies established by the Commission. If any member of the panel is unavailable to hear the matter, the Clerk shall assign another member of the Board to serve on the panel hearing the matter.

(Amended December 11, 1992, effective March 1, 1993.)

### RULE 213   Electronic Filing

All pleadings, motions, briefs and documents shall be electronically filed with the Clerk of the Commission in accordance with Supreme Court Rules 9 and 10 and with the "ARDC Electronic Filing Procedure and User Manual," and, except as otherwise provided in Commission Rules 214 and 215, service of such pleadings, motions, briefs and documents shall be made in accordance with Supreme Court Rules 11 and 12. For purposes of these Rules, the word "filing" shall mean "electronic filing," and the parties are no longer required to file copies of any pleading, motion, brief or document that is electronically filed.

(Adopted October 19, 2018, effective January 1, 2019)

### RULE 214   Service of Process

A person authorized to make service, as provided in Rule 215, shall cause a copy of the complaint or petition, a copy of these rules and a notice of the hearing to be served on the respondent within or without the State of Illinois:

(a) In any manner authorized by the Code of Civil Procedure.

(b) **By Mail Service.** If a person authorized to make service, as provided in Rule 215 below, files with the Hearing Board an affidavit that the respondent on due inquiry cannot be found or is concealed so that process cannot be served upon him or her, the Administrator shall serve the respondent by ordinary mail, postage fully prepaid: (1) directed to the respondent at the address listed on the Master Roll, as defined in Supreme Court Rule 756(b), and to any other last known business or residence address, or (2) if the respondent is not listed on the Master Roll, at any address last designated by the respondent on the Master Roll, or in the equivalent of the Master Roll in any jurisdiction, as defined in Supreme Court Rule 763, in which the respondent is or was licensed to practice law, and at his or her last known business or residence address. The Administrator's certificate of mailing or delivery is sufficient proof of service.

(c) **By Agreement.** A respondent, or the respondent's counsel, may agree to a reliable method of service, including by electronic means. A member of the Administrator's staff shall deliver, mail, e-mail, or otherwise transmit a copy using the agreed-upon method of service, and shall file an affidavit attesting to the service. The action shall proceed as if a complaint had been served at the time of filing the affidavit, and no additional proof of service shall be required.

(d) **By Entry of Appearance.** When an appearance is entered by, or on behalf of, a respondent before service has been otherwise effectuated, the action shall proceed as if a complaint had been served at the time of the entry of appearance, and no proof of service shall be required.

(Amended December 8, 2017, effective February 1, 2018.)

### RULE 215   Persons Authorized to Make Service

Service may be made:

(1) By a member of the Administrator's staff; or